WALLING, Adm'r of Wage and Hour Division, U. S. Dept. of Labor, v. NEW ORLEANS PRIVATE PATROL SERVICE, Inc.

Civil Action No. 373.

District Court, E. D. Louisiana, New Orleans Division.

Aug. 7, 1944.

144

Alexander E. Ralston, Jr., of New Orleans, La., for plaintiff.

Wm. H. Talbot and Louis C. Philips, both of New Orleans, La., for defendant

CAILLOUET, District Judge.

This action having been tried by the Court without a jury, and the Court having considered the stipulations of the par-

ties, the testimony adduced at the trial, and the briefs filed herein, hereby makes the following Findings of Fact and Conclusions of Law viz.:

### Findings of Fact

1. The defendant is a Louisiana corporation, which on and ever since October 24, 1938, the effective date of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. (hereinafter referred to as the Act) has made available and supplied watchmen and guards to its various clients or customers in the City of New Orleans, and environs thereof within Orleans Parish, Louisiana. In order to comply with its contracts to so furnish such service defendant has employed, at various times subsequent to October 24, 1938, from one hundred twenty-five (125) to two hundred (200) employees to act as watchmen and guards, and, in addition thereto, has continuously employed an office staff to perform (in its office located in the Pan-American Building, in New Orleans) necessary clerical, administrative and supervisory duties in connection with defendant's business. Approximately three hundred seventy-one (371) clients or customers are thus furnished watchmen and guard service; they include concerns engaged in interstate commerce and in the production of goods for interstate commerce, within the contemplation of the Act, concerns engaged in intrastate commerce, and occupants of private residences.

2. More than fifty per cent. (50%) of the defendant's total revenues accrued since October 24, 1938, inclusive, were derived from contracts with clients engaged in interstate commerce or in the production of goods for interstate commerce.

3. Such watchmen and guards were and are employed and dismissed by no one but defendant, which determines their duties, wages, hours and other conditions and practices of employment, pays them, and is their sole instructor, director, and controller, concerning the discharge of the duties of their employment. Defendant's said employees hold commissions as special police officers of the City of New Orleans, so that they may be thereby authorized, as they are, to carry weapons and to make arrests while performing their custodian duties on, in and around the premises which their employer, the defendant, is under contract to watch and guard. But such guards and watchmen are neither employed, dismissed, compensated, nor instructed, directed and controlled in the actual discharge of their prescribed duties by the City of New Orleans, which neither imposes any duty nor suggests or fixes wages and time and hours of work, with respect to the watchmen and guard service contracted by defendant to be rendered by it to its clients and customers.

4. Defendant's said employed guards and watchmen may be divided into two groups or classifications: Group (1) including employees assigned, for an entire shift, to the guarding of a particular customer's property; and Group (2), employees assigned to patrol, either on foot or in a patrol car, a "beat" or "round," whereon is located premises occupied, respectively, by several clients or customers. No guard or watchman works in and around defendant's office, reporting there only for administrative reasons, but performs his duties on and at the site of the property to be guarded, or in patrolling a particular "beat" or "round."

5. Many Group (1) employees were and are assigned to (a) the properties of concerns, manufacturing goods for interstate commerce, (b) wharves, ships and other facilities of steamship companies, employed in the transportation and distribution of goods in interstate and foreign commerce, (c) warehouses and properties of wholesalers and distributors, who receive and/or ship goods and merchandise from and to points beyond the State of Louisiana, and (d) essential instrumentalities of interstate commerce, such as the Huey P. Long Bridge, which spans the Mississipi River and is a part of U. S. Highway No. 90. The general duties of an employee, so assigned, were and are to guard and protect the property covered by the assignment, against fire, theft, sabotage, and other hazards.

6. Defendant's principal customers engaged in interstate commerce are steamship companies, operating vessels in and out of the Port of New Orleans. Many Group (1) employees were and are assigned to the guarding of the ships, wharves, and other facilities of said companies. The guards and watchmen so assigned, safeguard cargo moving in interstate commerce against fire, theft, and sabotage, and permit none but authorized persons to enter and leave the premises. Any watchman or guard assigned to duty aboard ship at the piers, likewise permits no unauthorized entry or exit, but inspects packages attempted

to be carried aboard ship by crew members or other persons, is on the lookout for fire, theft and sabotage aboard ship, and prevents the docking of small boats too near the vessel guarded, which might interfere with its scheduled time of departure.

7. All other watchmen or guards form the above mentioned Group (2). Their duties consist in watching over the premises and equipment of several establishments, grouped by defendant into "beats" or "rounds," and safeguarding against fire, theft, and other hazards, the properties and goods of the respective customers. Nightly, the roundsman's duty is to make regular inspection trips of his beat and to visit each "protected" establishment thereon, at fixed intervals.

8. The "roundsmen" patrol, among others, two beats or "rounds," to which defendant refers as its "downtown rounds" and "beat No. 11, front." Located on the "downtown rounds" are approximately fifty (50) establishments, of which nine (9) are admitted by the defendant to be engaged in interstate commerce or in the production of goods for interstate commerce, while covered by "beat No. 11, front," are approximately thirty-four (34) establishments, of which number, defendant admits seven (7) to be similarly engaged.

9. Among other "rounds" thus patrolled by defendant's said watchmen or guards, are beats known as "garden district," "beat No. 1," "beat No. 3," "beats Nos. 1 and 9," "beat No. 7," "beat No. 10," "beat No. 11, rear," "beat No. 12" and "uptown rounds." The parties have stipulated, and the Court finds, that none of the establishments located on these beats or "rounds" were and are engaged in interstate commerce or in the production of goods therefor.

10. Defendant's office employees have always performed the necessary clerical, administrative and supervisory acts and functions involved in the operation of its aforedescribed business, as, for instance, the preparation of customers' statements of account, the maintenance of accounts receivable and accounts payable ledgers, the carrying on of correspondence, the keeping of time and payroll records, and the assignment and instructing of guards and watchmen.

11. Defendant's said guards and watchmen have always been required, as condition of employment, to wear distinctive uniforms initially supplied by defendant, but for rental of which defendant deducts from each employee's wages, $3 monthly, during the first six months of employment, and thereafter, $2.50 per month. In many cases, such monthly deductions have been made when no more than the bare minimum wage prescribed in Section 6 of the Act was being paid the employee in interest.

12. The office employees, referred to in paragraph 10 hereinabove, in many instances, during the period involved in this action, worked weekly hours in excess of the maximum weekly hours prescribed by Section 7 of the Act, for which they received straight salaries, without being paid additional compensation covering the time worked in excess of the established maximum weekly hours, at a rate of pay not less than one and one-half times their regular rate of pay.

13. Likewise, the "roundsmen," referred to in paragraph 7 hereinabove, have worked during said abovementioned period of time, weekly hours in excess of the maximum weekly hours prescribed by said Section 7 of the Act, for which they received straight salaries, without being paid additional compensation covering the time worked in excess of the established maximum weekly hours, at a rate of pay not less than one and one-half times their regular rate of pay.

14. Prior to the filing of this action on August 17, 1940, and until April 15, 1942, the defendant, on advice of counsel that its operations probably were not subject to the Act, did not comply with either Sections 6 or 7 of the Act, in engaging the services of its employees constituting the abovementioned Group (1), and these employees usually received less than the applicable minimum hourly rates prescribed by Section 6 of the Act and also received no overtime compensation for time worked in excess of the established maximum weekly hours, though the same was and is required by Section 7 thereof.

15. Subsequent to April 15, 1942, defendant began to comply as to certain of its employees in said Group (1), who spent an entire workweek guarding the properties of one or more steamship companies engaged in interstate commerce; and likewise did comply with respect to other employees in said Group (1) who were occupied, during an entire workweek, in guarding the property of a single establishment engaged in interstate commerce or in the production of goods for interstate commerce, although

there were workweeks when defendant did not so comply with respect to such employees, so engaged.

16. Subsequent to April 15, 1942, many employees in said Group (1) were assigned to the guarding of steamship properties and, during the same workweek, to the guarding of premises occupied by other concerns, admitted by defendant to be engaged in interstate commerce or in the production of goods for interstate commerce. Generally, such employees worked in excess of 40 hours a week, the applicable maximum under Section 7 of the Act. These employees were not paid overtime compensation for time worked beyond the prescribed 40 hours workweek. However, whenever such an employee guarded steamship property for more than 40 hours consecutively, he received overtime compensation, but only for the hours in excess of 40 which he worked while so guarding steamship property, and he received straight time only, for the workweek hours during which he guarded premises occupied by other concerns engaged in interstate commerce or in the production of goods therefor. If such employee worked no more than the maximum number of hours per workweek guarding the steamship properties, and then worked additional hours during said workweek guarding the premises of concerns engaged in interstate commerce or in the production of goods therefor, defendant paid him no overtime for hours worked in excess of 40, but compensated him therefor on the basis of straight time.

17. Subsequent to April 15, 1942, many employees in said Group (1) were assigned, during the workweek, to the guarding of the premises of concerns admitted by the defendant to be engaged in interstate commerce or in the production of goods therefor, and, also, during the same workweek, to the guarding of properties of industrial concerns engaged solely in intrastate commerce, or to the guarding of private residences. Generally, under such circumstances, such employees worked in excess of 40 hours a week, and none received overtime compensation for time worked in excess of the prescribed 40 hours workweek. It was only when an employee worked more than 40 hours guarding steamship property or premises of an establishment engaged in interstate commerce or in the production of goods therefor, that he did receive overtime compensation, but then only for the hours worked in excess of 40 while so guarding either; such employee receiving nothing but straight time for all hours worked, during the remainder of his workweek, while guarding the premises of industrial concerns engaged solely in intrastate commerce, or guarding private residences.

18. During the period involved in this litigation the defendant did not make, keep and preserve records in accordance with the requirements of the regulations prescribed by the Administrator of the Wage and Hour Division, pursuant to Section 11 (c) of the Act, in that such records as were kept fail to show, in each instance: (1) The hours worked each workday, (2) the hours worked each workweek, (3) the regular rate of pay, (4) the total weekly straight time earnings and (5) the excess compensation attributable to overtime.

### Conclusions of Law

1. The Court has jurisdiction over the parties and of the subject matter involved herein, Sec. 17, Fair Labor Standards Act of 1938, Act of June 25, 1938, c. 676, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq., hereinafter referred to as the Act.

2. The employees of defendant, included in Group (1), as described in the foregoing Findings of Fact, were and are engaged in interstate commerce and in the production of goods for interstate commerce, within the meaning of the Act, in performing duties of guards and watchmen in and about establishments at which transactions in interstate commerce or production for interstate commerce is carried on. Kirschbaum v. Walling, etc., 1942, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Walling v. Sondock, 5 Cir., 1942, 132 F.2d 77, certiorari denied 1943, 318 U.S. 772, 63 S.Ct. 769, 87 L.Ed. 1142.

3. Defendant's said employees, so included in said Group (1), furthermore were and are engaged in interstate commerce, within the meaning of the Act, in performing guard and watchmen duties in and about essential instrumentalities of interstate commerce such as the wharves, ships, and other facilities of steamship companies used by such companies in the transportation and distribution of goods in interstate and foreign commerce. Overstreet v. North Shore Corporation, 1943, 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656.

4. The employees of defendant, included in Group (2), as described in the foregoing Findings of Fact were and are

148

engaged in interstate commerce and in the production of goods for interstate commerce, within the meaning of the Act, during a substantial part of each workweek in which they patrol the "downtown rounds" and "beat No. 11, front," mentioned in paragraph 8 of said Findings. Kirschbaum v. Walling, etc., and Walling v. Sondock, supra.

5. In view of the fact that a substantial part of the workweek activities of defendant's employees who performed clerical, administrative and supervisory duties (as set out in paragraph 10 of said Findings of Fact) related to the movement of goods in interstate commerce and to the production of goods for interstate commerce, such employees are covered by the Act. Fleming v. Jacksonville Paper Co., 5 Cir., 1942, 128 F.2d 395, modified and affirmed, Walling v. Jacksonville Paper Co., 1943, 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Kirschbaum v. Walling, etc., 1942, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638.

6. Defendant's employees are not engaged in a service establishment, the greater part of whose servicing is in intrastate commerce, within the meaning of the exemption from the wage and hour provisions set forth in Section 13(a) (2) of the Act, for three independently sufficient reasons: (1) The defendant does not furnish to its clients or customers the character of services that the statute terms "service establishment" and "servicing" contemplate, (2) the greater part of defendant's activities are not in intrastate commerce, and (3) the defendant's guards and watchmen are not "engaged in" the establishment, if any, operated by the defendant. Kirschbaum v. Walling, etc., and Walling v. Sondock, supra.

7. The defendant's guards and watchmen, who hold commissions as special police officers of the City of New Orleans, which is a political subdivision of the State of Louisiana (Creekmore v. Public Belt R. Commission of New Orleans et al., 5 Cir., 1943, 134 F.2d 576), are not employees of said City. Walling v. Sanders, 6 Cir., 1943, 136 F.2d 78; Act, Sec. 3(d, e), 29 U.S.C.A. § 203(d, e).

8. Defendant violated Sections 6 and 15 (a) (2) of the Act by paying to certain guards included within the aforementioned Group (1) of employees, who were, then and there, engaged in interstate commerce, or in the production of goods for

interstate commerce, within the meaning of said Act, wages at rates less than 25 cents an hour during the period from October 24, 1938, through October 23, 1939, and at rates less than 30 cents an hour during the period from October 24, 1939, to April 15, 1942.

9. Defendant violated Sections 7 and 15 (a) (2) of the Act, prior to April 15, 1942, by paying to certain guards, included within said Group (1) of employees, likewise engaged in interstate commerce, or in the production of goods for interstate commerce, within the meaning of said Act, compensation at rates less than one and one-half times their regular rates of pay, for hours worked in excess of forty-four (44) per week during the period from October 24, 1938, through October 23, 1939, and for hours worked in excess of forty-two (42) per week during the period from October 24, 1939, to October 23, 1940, and for hours worked in excess of forty (40) per week during the period from October 24, 1940, to April 15, 1942.

10. Defendant, in paying its office employees fixed salaries without additional overtime compensation for hours worked in excess of the applicable statutory maximum, has violated Sections 7 and 15(a) (2) of the Act during the period from October 24, 1938, to the date of trial, i.e. March 17, 1944. Overnight Motor Transportation Co. v. Missel, 1942, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; Warren-Bradshaw Drilling Co. v. Hall, 5 Cir., 1941, 124 F.2d 42, affirmed 1942, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83.

11. Defendant, in paying guards and watchmen, included within the hereinabove mentioned Group (2) of employees and patrolling the "downtown rounds" and "beat No. 11, front," fixed salaries without additional compensation for hours worked in excess of the applicable statutory maximum, has further violated said Sections 7 and 15(a) (2) of the Act during said period from October 24, 1938, to the date of trial, i.e. March 17, 1944. Overnight Motor Transportation Co. and Warren-Bradshaw Drilling Co. cases, supra.

12. Defendant, in making monthly deductions, from the wages earned by its guards and watchmen, to cover the charged rental of necessary uniforms supplied by it to its said employees, did violate Sections 6 and 15(a) (2) of the Act each time that any such deduction cut into and deprived the employee of any part

of the applicable minimum wage for which he was then working.

13. Defendant has violated Sections 11 (c) and 15(a) (5) of the Act by failing to make, keep and preserve records detailing all such information, as was and is required by the regulations prescribed by the Administrator of the Wage and Hour Division.

14. Since April 15, 1942, defendant has violated Sections 7 and 15(a) (2) of the Act by failing to pay many of its employees included within the aforementioned Group (1) (who were assigned to the work of guarding properties of steamship companies engaged in interstate and foreign commerce and then, were further assigned to like work, during the same workweek, with reference to the properties of other concerns engaged in interstate commerce or in the production of goods for interstate commerce) overtime compensation for hours worked in excess of 40 during the workweek, at rates not less than one and one-half times such employees' respective regular rates of pay. Walling v. Sondock, 5 Cir., 1942, 132 F.2d 77, certiorari denied, 1943, 318 U.S. 772, 63 S.Ct. 769, 87 L.Ed. 1142.

15. Defendant having failed to make, keep and preserve the required records, but it being, however, satisfactorily established herein that many of defendant's employees, included within Group (1) hereinabove defined, did spend a substantial part of each workweek in guarding property and premises of defendant's clients or customers engaged in carrying on interstate commerce therefrom, or in the production therein of goods for interstate commerce, although the same employees, during the same workweek, were also assigned by defendant to the guarding of property and premises not so used, said defendant must be dealt with, and adjudged, as having furthermore violated sections 7 and 15(a) (2) of the Act ever since April 15, 1942, by its not having paid said employees overtime compensation for hours worked by them in excess of 40 during the workweek, at rates not less than one and one-half times such employees' respective regular rates of pay. Fleming v. Jacksonville Paper Co., 5 Cir., 1942, 128 F.2d 395, modified and affirmed, Walling v. Jacksonville Paper Co., 1943, 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Guess v. Montague, 4 Cir., 1943, 140 F.2d 500; Fleming v. Knox, D.C.S.D.Ga., 1941, 42 F. Supp. 948; Holland v. Amoskeag Mach. Co., D.C.D.N.H.1942, 44 F.Supp. 884.

16. Plaintiff is entitled to an injunction enjoining and restraining defendant from violating the provisions of Section 15(a) (2) and (5) of the Act.

The proper decree, in consonance with the foregoing, may be presented for entry.