## WALLING v. THOMPSON et al.
### No. 4185.

District Court, S. D. California,
Central Division.

May 3, 1946.

H. Miles Raskoff, of Los Angeles, Cal., Douglas B. Maggs, and Archibald Cox, both of Washington, D. C., and Dorothy M. Williams, of San Francisco, Cal., Office of Solicitor, U. S. Department of Labor, for plaintiff.

McLaughlin, McGinley & Hanson, of Los Angeles, Cal., for defendant.

HALL, District Judge.

This suit was brought by the Administrator of the Wage and Hour Division, United States Department of Labor, to enjoin the defendants from violating the maximum hours provisions and the record keeping provisions of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq.

Most of the relevant facts are stipulated.

The defendants' business consists of the installation, servicing and repair of burglar alarm systems leased and serviced by the defendants to firms and concerns wholly within the State of California in the vicinity of Los Angeles. Batteries for the alarms, locks, and tinfoil are purchased from outside the State of California.

The defendants use a uniform printed Installation Order and Rental and Service Contract. The customers or subscribers pay the defendants an initial fee upon the installation of the alarm system and thereafter a specified monthly rental.

Each of the burglar alarms installed by the defendants' business operates on the so-called "closed circuit" principle; that is, any break in the wiring causes the bell to sound. Electricity to operate the bell is supplied by batteries which are a part of the installation. The bell box of the installation is attached to the building, and wiring is placed around doors, windows and other openings through which an intruder might gain entrance. The burglar alarm is not connected to any central information point. The function of the installation is to cause the bell to ring so that the noise of the bell will attract the attention of a watchman, police officer, or others who might be in the vicinity of the building.

The installation is so designed that the bell will ring for a period of eight to ten hours unless stopped by someone familiar with it.

The defendants' business regularly employs twenty-two employees as follows: six service men, nine installation men, one shop man, one bookkeeper, one salesman, one collector, two dispatchers, and one superintendent.

The service men inspect the installations periodically, replace the batteries where necessary, answer emergency calls, and make repairs. The installation men make the installations of the burglar alarm systems. The shop man preassembles the apparatus. The bookkeeper works at the defendants' establishment keeping the defendants' records. The salesman promotes the sale of and sells defendants' burglar alarm service. The collector works largely on the outside, signing up new customers, estimating installation costs, and collecting monthly rentals. The dispatchers remain on the defendants' premises, receive incoming calls and direct the service men and installation men as to where their services are needed. The superintendent supervises the work of the service men and the installation men. The superintendent is conceded by the Administrator to be exempt from the Act by Section 13(a) (1), as an executive.

During the period from October 24, 1940 to July 1, 1944 the defendants have leased and serviced burglar alarm installations in 2905 establishments. At the present time the total number of establishments served is 2850.

During the period October 24, 1940 to July 1, 1944 there was a total of 215 customers, or 7.5%, who were producing goods for inter-state commerce.

During the same period 185 of defendants' customers, or 6.5%, were engaged in interstate commerce.

The remainder of defendants' customers, 86%, are concerns such as markets, service stations, and restaurants and a "few private homes".

The defendants' employees generally work 48 hours a week but frequently work a greater number of hours, and are compensated therefor at straight-time rates.

None of them is paid time and one-half for hours worked in excess of 40 in a workweek. Hours worked in excess of 48 hours per week are entered as "overtime" on the defendants' books and are paid for at straight-time rates which are computed on the basis of 1/48 of the weekly salaries, except for certain employees who are paid a flat amount for certain special shifts. Prior to July of 1944, the defendants' records did not disclose the hours worked each day and each week by their employees, but after that date the defendants have complied with the record-keeping provisions of the Act.

### Questions Presented

Two main questions are presented (1) whether defendants' employees are engaged in "commerce", or in the "production of goods for commerce", so as to bring them within the coverage of Sec. 7 and Sec. 11 (c) of the Act, and (2), if so, whether they are exempted from the Act because they are "engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce" as provided by Sect. 13(a) (2).

I. From the statement of facts it is evident that the defendants' employees are not, in a literal sense, either engaged in "commerce", or in the "production of goods for commerce."[1]

If they are within the general coverage of the Act it must be under the terms of Sec. 3(j) of the Act which brings within its ambit all who are engaged "in any process or occupation necessary to the production" of goods for commerce.

While only 7.5% of defendants' customers are "engaged in the production of goods for commerce", all of defendants' employees perform their respective functions with relation to that 7.5%. There is no segregation among defendants' employees as to that 7.5% of defendants' customers so engaged in the production of goods for commerce and the other 92.5% of defendants' customers not engaged in the production of goods for commerce.

There is no question but that each class of occupation of defendants' employees perform a necessary function in the conduct of defendants' business, so that defendants' employees are either all included or all excluded under the Act.

The proposition then turns on the question as to whether or not defendants' business of installing and servicing burglar alarms is a process or occupation "necessary" to the production of goods for commerce by that 7.5% of defendants' customers.

The first answer to this question is found in the fact that the defendant has 2850 customers. It is not only a fair inference, but the realities of life make it a compelling one, that the defendants' customers consider the defendants' burglar alarms "necessary" or they would not pay money to get them.

The rationale of Roland Electrical Company v. Walling, 4 Cir., 146 F.2d 745, is that the test of what is "necessary" is not indispensability, but actual use.

The mechanical burglar alarm systems of defendants perform in the end the same function as would a human watchman. There is sufficient authority holding that human watchmen are "necessary" so that the matter can be considered as settled.[2] Thus the defendants' services are "necessary" in the production of goods for commerce by the 7.5% of defendants' cus-

---

[1] Kirschbaum v. Walling, June, 1942, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Warren Bradshaw Drilling Co. v. Hall, Nov. 1942, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83; Higgins v. Carr Brothers Co., Jan. 1943, 317 U.S. 572, 63 S. Ct. 337, 87 L.Ed. 468; Walling v. Jacksonville Paper Co., Jan. 1943, 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; McLeod v. Threlkeld, June, 1943, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538.

[2] Kirschbaum v. Walling, supra; 10 East 40th St. Bldg., Inc., v. Callus, June 1945, 325 U.S. 578, 65 S.Ct. 1227, 89 L. Ed. 1806; Walton v. Southern Package Corp., Jan. 1944, 320 U.S. 540, 64 S.Ct. 320, 88 L.Ed. 298; Slover v. Wathen, 4 Cir., Jan. 1944, 140 F.2d 258; Walling v. Sondock, 5 Cir., July 1943, 132 F.2d 77; Walling v. Merchants Police Service, D.C.W.D.Ky., Mar. 1945, 59 F.Supp. 873; Walling v. New Orleans Private Patrol Service, Inc., D.C.E.D.La., Aug. 1944, 57 F.Supp. 143.

tomers and defendants' employees are under the general coverage of the Act.

II. Turning now to the question as to whether or not the defendants are a "retail or service establishment the greater part of whose selling or servicing is in intrastate commerce", so as to exempt them under Sec. 13(a) (2) of the Act.

There is no question but that defendants' business is a "service establishment".

The first question to consider is whether or not the "greater part" of their service is in "intrastate commerce". Concededly the 86% of their service that is used by customers who are not "engaged in producing goods for commerce", or "engaged in interstate commerce", is in intrastate commerce. And whether or not the selling of the service to the remaining customers who make up the latter two categories are in intrastate commerce or in interstate commerce, it must be accepted that 86% is the "greater part" of their servicing and it is in "intrastate commerce."

The question then turns on the word "retail", as used in the Act.

The Act reads, "retail *or* service", establishment. In the ordinary use of language the use of the word "or" indicates that what immediately follows it is to be disjoined from and is different than what immediately precedes it, so that one would be justified, from the language of the Act, in assuming it to mean that a service establishment which was not retail in character would be exempt if the greater part of its servicing was in intrastate commerce. And that would be my conclusion had not the Supreme Court held otherwise.

■ In the Roland case, supra, the Supreme Court considered the matter and held to the contrary. By that case, the word "retail" is held to modify the word "service" regardless of the use of the word "or" between them, so that the Act is to be interpreted as if Congress, instead of saying as it did, "retail *or* service establishment", had actually said "retail selling or retail servicing establishment."

Hence the defendants in order to be exempt must be a "retail" service establishment. The defendants contend that they are, inasmuch as their service is not resold by their customers and inasmuch as their customers are in fact the ultimate consumers. But howsoever persuasive these standards might have been in the past for determining whether or not one was a retailer, the Roland case, supra, has made clear that, in the Fair Labor Standards Act, Congress intended the word "retail" to have a different meaning than these commonly used meanings.

■ From that case, it may be broadly stated that the "retail" character of an employer is not to be determined by the nature of the employer's business exclusively, but also, whether the final purchaser uses the service or commodity to satisfy a *personal want or necessity;* or uses it to satisfy a *business necessity.*

The defendants' customers are final purchasers in the sense that they do not again resell that which they purchase. But, as indicated, it is a necessity in their business just as the building watchmen in Kirschbaum v. Walling; 10 East 40th Street Bldg., Inc., v. Callus and Walton v. Southern Package Corp., and as the prier watchman in Slover v. Wathen, and as the patrol watchmen in Walling v. Merchants Police Service; Walling v. New Orleans Private Patrol Service, and Walling v. Sondock, supra, note 2.

[5] Hence the conclusion follows that the defendants are not a "retail" service establishment and are not exempt under the provisions of Sec. 13(a) 2 of the Act.

■ Inasmuch as the defendants are now in compliance with the Act so far as the record-keeping provisions are concerned, the plaintiff is not entitled to an injunction as to such record-keeping. But otherwise the injunction will be granted as prayed, except as to the Superintendent.

Plaintiff will prepare Findings of Fact and Conclusions of Law and Judgment accordingly.