## AHEARN et al. v. HOLMES ELECTRIC PROTECTIVE CO.

United States District Court
S. D. New York.
March 17, 1953.

Wilbur Duberstein, New York City, for plaintiffs.

Bleakley, Platt, Gilchrist & Walker, New York City, for defendant (F. A. Fritz and A. T. Antinozzi, New York City, of counsel).

FOLEY, District Judge.

This action was tried by the Court at New York City in the Southern District of New York, and is brought under the provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. It was originally commenced for 224 employees of the defendant company in 1947. .The number of plaintiffs, for various reasons, was reduced at the trial and at the time of submission of the issues to 183 plaintiffs. The original period for which unpaid overtime is claimed under the Act, by amended complaint, now runs specifically from January 4, 1942 to September 14, 1943.

The business of the defendant company and the operation in such business of its employees have been described in detail judicially, administratively and by the president of the defendant.[1] It would be judicial waste to encumber the record again with such detail, except where it specifically applies to the issues presented. It suffices to state generally that the defendant, seemingly alone in this field, furnishes protection service from burglary and unauthorized entry to its various subscribers throughout the great metropolis of New York. The bulk of the subscribers is business establishments. The protection is provided either by the physical presence of employees at certain premises or, as in most instances, by the maintenance of in-

---

1. Holmes Electric Protective Co. v. McGoldrick, etc., 262 App.Div. 514, 30 N. Y.S.2d 589; Plaintiff's Exhibit 29; Plaintiff's Exhibit 30.

tricate electrical circuits which upon disturbance give alarm back to control and service stations of the defendant and cause investigation of the premises by certain employees of the defendant charged with that duty. The first function of guarding physically is a simple one and such employees rendering such service are designated "patrolmen." The electrical function is a coordinated one and entails the integrated duties of many employees bearing titles, as guards, senior guards, chauffeur guards, repairmen, linemen, deskmen, switchboard operators. Such titles give good indication of the work performed by them.

Sixty-three plaintiffs during the period claimed acted as patrolmen and the assignment of sixty-one of such number during the period involved are shown in plaintiff's Exhibit 52. All the remaining plaintiffs, and for some period twenty-one of the above patrol groups, participated in some part of the wiring and electric alarm control system during the period claimed (plaintiff's Exhibits 53, 53–A). The majority of the remainder acted as guards, who were stationed at control and service stations, and responded to alarms by going immediately to the premises to apprehend intruders. The defendant concedes in its brief, and the concessions are few, that patrolmen physically guarding telephone exchanges and premises of occupants engaged in the production of goods for interstate commerce would be covered by the Act during the period they were so engaged.

Throughout the trial and in the submission of the case, the defendant put the plaintiffs "to their proof" in the most literal sense of that phrase. The result has been a masterful presentation of proof, and the careful preparation of exhibits digested from the records of the defendant that are most helpful to decision. The intolerable burden sought to be placed upon the plaintiffs would be an unconscionable one because of the employer-employee relationship and is contrary to settled authority. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686–688, 66 S.Ct. 1187, 90 L.Ed. 1515; Guess v. Montague, 4 Cir., 140 F.2d 500. To decide otherwise in the application of the Act, broad in its humane and economic purposes, the law might well earn the fiction "a ass, a idiot."

By its answer the defendant denies that the Act covers the particular plaintiffs here and asserts that even if covered the plaintiffs were paid all overtime compensation in conformity with the Act. Separate affirmative defenses are set up as a bar to complete and partial recovery under Sections 9 and 11 of the Portal-to-Portal Act, 29 U.S.C.A. §§ 258, 260. I shall discuss such issues in the order stated.

First, in my judgment, there is sufficient showing in the proof that the plaintiffs in the discharge of their duties during the periods involved and claimed come within the coverage of the Act. There have been established throughout the years many judicial guides for the situation presented here.

The highest authority has passed upon similar activities several times. It is clear that a mathematical or rigid formula cannot be found in the Act. However, specific ideas have been advanced as to the general tests to be applied. Such test is related to the employees' activities; it is enough that the occupation be "necessary to production for commerce," not indispensable; there be present a close and immediate tie with the process of production for commerce, not a tenuous relation. 29 U.S.C.A. § 203(j); Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Walton v. Southern Package Corp., 320 U.S. 540, 64 S.Ct. 320, 88 L.Ed. 298; Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118.

It was emphasized throughout these above cases that the maintenance of a safe, habitable building is indispensable to the activity of interstate commerce in which tenants engage. In Walton v. Southern Package Corp., supra, and Armour & Co. v. Wantock, supra, the insurance saving contributed to any business by the presence of watchmen and firemen was an important factor in decision. Strikingly similar to our situation is the statement in Armour & Co. v. Wantock, supra, 323 U.S.

at page 133, 65 S.Ct. at page 168, "Of course an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen. * * * That inactive duty may be duty nonetheless is not a new principle invented for application to this Act." Several recent decisions of the Supreme Court again indicate the liberal interpretation to be given to coverage of employees under the Act. Alstate Construction Co. v. Durkin, 345 U. S. 13, 73 S.Ct. 565; Thomas v. Hempt Bros., 345 U.S. 19, 73 S.Ct. 568.

Lesser authority has brought employees engaged in like occupations as here within the Act. Walling v. Thompson, D.C., 65 F.Supp. 686; Walling v. New Orleans Private Patrol Service, D.C., 57 F.Supp. 143.

Applying these settled principles, the facts concerning the activity of the plaintiffs in their employment indicate clearly to me coverage under the Act. The electrical lines of protection were maintained and serviced throughout an industrial area in the City of New York that stagger the imagination. The manufacturers in the fur district, the garment district, the jewelry district, subscribed for this protection as a routine part of their business and their insurance savings were very substantial. In D. A. Schulte, Inc., v. Gangi, 328 U.S. 108, 120, 66 S.Ct. 925, 90 L.Ed. 1114, it was judicially noticed that New York City produces more garments for interstate shipment than any other city in the nation.

The protection provided to the banks, involved the largest commercial banks in the world. Under Bozant v. Bank of New York, 2 Cir., 156 F.2d 787, 790, such large commercial banks were engaged in "producing goods for commerce". It seems foolish quibbling to me to distinguish the branches of these large institutions from the main office bank. The noteworthy reference in the Bozant case is that it is not necessary that the whole document be prepared in the building. These branches are not in any sense the "country store" type of branch, and in my reasoning the whole should be the sum of its parts. The branch activity was magnificently described by one banking witness from the National City Bank, "we say the bank around the corner can serve you around the world." (R. 792)

The only refutation to the activities of the plaintiffs in protecting these substantial interstate activities was the development on cross examination that the protection extended into some retail and miscellaneous businesses. However, there was sufficient showing that the activities of the plaintiffs were substantial in relation to such interstate commerce. It does seem logical to set as the test the lines running into the various premises, because in my judgment, the installation, maintenance and guarding of such lines is, in this modern day, the same as a physical presence. The guards were on the alert to rush armed with weapons to apprehend intruders on the subscribers' premises. However, even under a count as individual subscribers, the activities of the plaintiffs would be substantial and necessary in the production of goods for interstate commerce. (Plaintiff's Exhibit 33).

The percentage of activity of the tenants and the percentage of activity of the employees necessary to be substantial is discussed in Walling v. Jacksonville Paper Co., 317 U.S. 564, 571, 572, 63 S.Ct. 332, 87 L.Ed. 460; Baldwin v. Emigrant Industrial Savings Bank, 2d Cir., 150 F.2d 524, 525, 161 A.L.R. 1234, certiorari denied 326 U.S. 767, 66 S.Ct. 171, 90 L.Ed. 462; Fleming v. Post, 2 Cir., 146 F.2d 441, 443, 158 A.L.R. 1384; Skidmore v. John L. Casale, Inc., 2 Cir., 160 F.2d 527, 529. The activities shown here as to tenants and plaintiffs are far above the percentage and standards fixed. Also, in Schulte v. Gangi, supra, and U. S. v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, it was established that the individual products do not have to be traced into commerce but that fact may be reasonably inferred.

The plaintiffs here, consisting of patrolmen guarding telephone exchanges and large industries by physical presence; guards waiting at control or service stations for alarms and daily testing such alarms; repairmen who maintain and repair such lines, and the switchboard oper-

ator so essential to this integrated function of protection, are, in my judgment, within the provisions of the Fair Labor Standards Act.

■ Second, the issue now presented by the denial of the defendant is that even if the plaintiffs here are covered by the Act, the plaintiffs have not sustained their burden in proving that they were not paid all of the overtime they were entitled to receive during the period involved under the provisions of the Fair Labor Standards Act. I do not agree.

For the periods involved in 1942 and 1943, the plaintiffs worked under collective bargaining agreements for the years 1942 and 1943 (plaintiff's Exhibits 2, 3). The important clause set up in each contract as Article IV for overtime work is referred to as "the formula clause." The questionable part of such clause, Article IV, is the exception (1) that if his (each employee) normal work week be more than 40 hours it (the regular and agreed to hourly rate of pay) shall be the amount arrived at by dividing his authorized weekly wage by a divisor equal to 40 plus 1½ times the hours in excess of 40 in his normal work week.

A formula greatly similar for computing overtime was unanimously struck down by 149 Madison Ave. Corp. v. Asselta, 331 U.S. 199, 67 S.Ct. 1178, 91 L.Ed. 1432. There is little material difference I can discern in the intent of the two formulas and their practical effect in application. It does not seem that the contract regular rate represented the rate actually paid for ordinary, non-overtime hours. The contract rate was derived not from actual hours and wages but from a mathematical manipulation. Walling v. Helmerich, 323 U.S. 37, 41, 65 S.Ct. 11, 89 L.Ed. 29. The same factors militating against the formula in the Asselta decision of the Supreme Court are found here. There is present an exception for employees working less than 40 hours per week in the application of the formula and an idealistic arrangement for additional compensation for excusable absences, called in the contracts here in question "an equating clause." The defendant itself recognized the artificiality of the formula and honestly described it as such in another matter (defendant's Exhibit N). The payroll records indicate the fiction of the formula in relation to the facts of employment of the various plaintiffs.

It is interesting to read the near final result of the Asselta case in Asselta v. 149 Madison Ave. Corp., D.C., 90 F.Supp. 442, 446, 447. It is evident that during the years 1941 and 1942 these were the times that tried employers' souls with the realization that many of them might come under the Fair Labor Standards Act. I say in no derogation at all that such crisis gave birth to the formula method in the double effort to comply and still save. The formula was a popular recipe of the times.

In my judgment, the formula did not establish the true "regular rate" for the period involved in the sense inherent in the statute. Overnight Motor Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; 149 Madison Ave. Corp. v. Asselta, supra.

■ Third, I believe that the defendant has established in the evidence a complete defense to recovery for a portion of the period claimed under Section 9 of the Portal-to-Portal Act. It is my considered judgment that the letter of October 23, 1942 (defendant's Exhibit B) from an inspector of the U. S. Department of Labor, Wage & Hour Division, to the attorney for the defendant company constituted an administrative approval, interpretation and ruling under the provisions of the section of the Act. 29 U.S.C.A. § 258. I can read the letter in no other manner. It was the rerult of a conference held with representatives of the government in reference to the 1942 contract. The assurance to be gained from the reservation only as to the "equating clause" article of the contract is a negative one, of course, as to the formula clause, but it is a real assurance to be drawn by any intelligent person receiving such letter. The reservation pinpoints to me the only possible disapproval of the contract. The attorney for the plaintiffs sought to tie in the statement referring "to settle the case" to the voluntary settlement made in

July 1942 by Holmes with its employees in the substantial sum of about $230,000 for back overtime running from 1938 to 1942. This was a voluntary arrangement between the employer and the union, and the Wage & Hour Division acted only in a supervisory and ministerial capacity in respect to it. The letter was aimed directly and solely at the provisions of the 1942 contract. Mr. Ward, a straightforward witness, the vice president in charge then and now president of the defendant, testified that there was reliance by the company upon such letter and denied vigorously that it referred to the previous settlement (R. 721, 724, 764). I am satisfied as to the good faith of the defendant in this respect. It seems also important to note that future disapproval of any contract provisions in the 1942 or 1943 contracts was never expressed by the Wage & Hour Division.

In my judgment, the letter of October 23, 1942, at the possible time of receipt the day thereafter and reliance by the defendant, is a complete bar to any recovery by the plaintiffs subsequent to that date. Therefore, under this conclusion, the plaintiffs may only recover overtime to be computed at the regular rate from January 4, 1942 to October 24, 1942.

■ Fourth, it is further my judgment that the defendant has upheld its affirmative defense under Section 11 of the Portal-to-Portal Act, 29 U.S.C.A. § 260. I do not intend to labor this conclusion because much of my reasoning is similar to that set forth in the discussion of that issue in Asselta v. 149 Madison Ave. Corp., 90 F. Supp. 442, 446, supra. As previously stated, the circumstances surrounding the use of the formula clause by that employer are similar to those here. This defendant was negotiating and finally settled for a substantial sum of money previous claims for overtime. The defendant never acted as an outlaw but constantly, and in high hopes, conferred and gave full disclosure of the negotiated contract provisions to the proper representatives of the Wage & Hour Division. The fact that they continually denied coverage under the Act was a good legal position, and the honest attempt to comply was a good business position. The

contracts were signed after much discussion and negotiation, and the union was never in the vineyard alone having the advantage of the presence and services of an attorney, described as a well-recognized labor attorney (R. 165). It is also highly important on the question of "reasonable grounds for believing" that the use of the formula was officially approved by directive order of the National War Labor Board, dated September 14, 1943 (defendant's Exhibit A).

This is a clear indication that reasonable persons could differ upon the use of the formula. The similar formula was not disapproved by the Supreme Court in 149 Madison Ave. Corp. v. Asselta, 331 U.S. 199, 67 S.Ct. 1178, 91 L.Ed. 1432, until May 5, 1947.

Upon these facts, the plaintiffs are not entitled to recover liquidated damages for the period on which I have granted recovery.

■ Upon the problem of interest, I personally would be inclined to follow the equitable and moral reasoning set forth in still another phase of the never-ending Asselta case [Asselta v. 149 Madison Ave. Corp.], D.C., 95 F.Supp. 856. I feel that it is a good moral and equitable position because of the delay of payment in moneys to which I now find the plaintiffs entitled, but the reading of the statute and the weight of responsible authority are against such holding. See Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 65 S.Ct. 895, 89 L. Ed. 1296; Kreeft v. R. W. Bates Piece Dye Works, 2 Cir. 150 F.2d 818; Landaas v. Canister Co., 3 Cir., 188 F.2d 768; 29 U.S.C.A. § 216 (b). Interest on recovery is disallowed.

■ The defense that the defendant is a service establishment under 29 U.S.C.A. § 213 (a) (2) is answered in Kirschbaum v. Walling, supra; Fleming v. Arsenal Bldg. Corp., 2 Cir., 125 F.2d 278; Walling v. Roland Electrical Co., 4 Cir., 146 F.2d 745, 747; Walling v. Thompson, supra; Walling v. New Orleans Private Patrol Service, supra, 57 F.Supp. at page 148, conclusion 6.

The plaintiffs may recover as stated herein. It is my understanding that a recomputation of the overtime due plaintiffs under the regular rate shall be agreed upon and submitted. My findings of fact and conclusions of law on the present issues shall be filed with this opinion. Additional findings and conclusions may be prepared on the amount due and the amount of allowance to be granted to the attorney for the plaintiffs, and the proper decree may enter. I shall hold in abeyance the amount of attorney fee to be allowed until the amount of recovery is computed. The attorney for the plaintiffs on the question of fee is requested to submit his personal estimate of the value of his services. The record and exhibits shall be forwarded for filing to the Clerk of the Southern District with this decision for the convenience of the attorneys.