**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,**

**v.**

**OLD DOMINION CORPORATION, a corporation, and Algar, Incorporated, a corporation, Defendants.**

**Civ. A. No. 4583.**

United States District Court
E. D. Virginia,
Alexandria Division.

April 4, 1968.
Supplemental Opinion June 14, 1968.

---

William H. Horkan and Marsha E. Swiss, Trial Attys., Dept. of Labor, Washington, D. C., John D. Schmidtlein, Asst. U. S. Atty., Alexandria, Va., for plaintiff.

Henry St.J. Fitzgerald, Arlington, Va., for defendants.

## MEMORANDUM ORDER

KELLAM, District Judge.

Pursuant to the provisions of the Fair Labor Standards Act, as amended (Title 29 § 201, etc., U.S.C.A.), plaintiff here seeks to require defendants to comply with the provisions of said Act, to determine the sums now due employees of defendants for prior failure to comply with the terms of the Act, and require payment of said sums. Most of the facts are covered by the Request for Admissions, Answers to Interrogatories, and agreed or stipulated facts, which are set out in Government Exhibits 1 through 20. The whole matter turns on a determination of the question of whether the activities of the defendants are related and performed for a common business purpose, either through unified operation or common control, so as to constitute an enterprise within the meaning of Title 29 § 203(r), as amended. If the activities of defendants constitute an enterprise within the meaning of said section defendants are in violation, otherwise they are not.

Old Dominion Corporation (Dominion) was formed in 1946 for the purpose of constructing residential structures for speculative sale. It continued this course until 1954 or 1955. Thereafter it devoted its entire activities to construction work for the United States Government and related agencies (Government). Algar, Incorporated (Algar) was formed in 1950 to carry on commercial construction work. It is licensed by the State of Virginia to carry on a general contractor's business and is a registered contractor as required by the provisions of Chapter 7, Title 54–113, etc., of the Code of Virginia. That chapter (Title 54–128) makes it unlawful for one to carry on a general contracting business in Virginia without being registered and securing the license required

thereby. Dominion does not hold such a license. Inasmuch as it contracts only for government work, it says such license is not required. Dominion and Algar occupy the same office space, have the same officers and directors, employ a common office force, including the same estimator and secretary. The estimator and secretary are carried on the payrolls of each corporation for alternating periods of six months. Separate payrolls are kept for the employees of each corporation. Each corporation maintains a separate bank account, account books, and all of their other records are separately maintained; the borrowing and financing of each corporation is separate; the profits and losses are not consolidated, and the loss of one is not charged against the profits of the other. Dominion has approximately thirty employees and Algar approximately eighteen. While defendants' secretary testified that few employees were interchanged between the defendants, the extent of such exchange is shown by Exhibits 3 through 20. One Utterbach is jointly employed as superintendent by each of defendants and receives a weekly prorated pay check from each of them. He assigns employees to jobs with each corporation as the need arises. Employees who perform work for each corporation during a work week receive a check from each corporation for the work performed for that corporation. Each corporation has had employees who regularly handle goods which have moved and are moving in interstate commerce.

■ Do the above facts establish the existence of an enterprise within the meaning of the Fair Labor Standards Act? The burden of proof is upon the plaintiff to show by a preponderance of the evidence the existence of the enterprise. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L. Ed. 1515; Wirtz v. Durham Sandwich Co., 259 F.Supp. 710 (D.C.N.C.1965). Since the facts are not in dispute, it is a question of applying the law to the facts. The Act was described by the Su-

preme Court of the United States in Tennessee Coal, Iron & R. Co. v. Muscoda Local, 321 U.S. 590, 597, 64 S.Ct. 698, 88 L.Ed. 949, as "remedial and humanitarian in purpose" and not to be "interpreted or applied in a narrow, grudging manner." It is to be given a liberal construction. Wirtz v. Ti Ti Peat Humus, 373 F.2d 209 (4th Cir. 1967); Mitchell v. Empire Gas Engineering Company, 256 F.2d 781 (5th Cir. 1958); Wirtz v. First State Abstract and Insurance Co., 362 F.2d 83 (8th Cir. 1966); Wirtz v. Columbian Mutual Life Insurance Co., 380 F.2d 903 (6th Cir. 1967).

■ Control of the two corporations is vested in the same stockholders and directors. The administrative officer of each is the same. The power to employ, discharge, control and direct the employees of each corporation is vested in the same chief administrative officer. The right to bid on any contract, the amount of the bid and all other decisions involving each corporation are vested in the same parties. Each corporation's finances, policies and affairs are directed by the same administrative head. The mere fact that Dominion is not registered with the Virginia State Board of Contractors is of no moment. It may apply for and obtain registration at any time it desires. Each contract undertaken by either corporation promotes the general contracting business of the owners. Other than some tax advantage, the loss in one and profit in the other is the ultimate loss or gain of the same stockholders. What is the difference between the defendants here and a case where the same individuals desiring to engage in the general contracting business form two separate corporations permitting one to do only the brick work, or plastering, and the other to do the carpenter work; or one to be general contractor and the other a sub-contractor. In such case, one of such contractors would not be required to comply with the provisions of § 54–113, etc., of the Virginia Code—requiring registration and licensing of general or sub-contractors—if the amount of its contract or

sub-contract did not amount to $20,000.-00. Yet the common interest and purpose of each would be the same.

In the case at bar, the related activities of each corporation are for the common business purpose of contracting to build. With the same general operating head and same general superintendent it is hard to conceive how the good will established by one building corporation, acting through the same administrative head (President) and general superintendent, would not affect the good will and affairs of the other corporation. To be certain, the purchasing of materials and supplies, the awarding of sub-contracts for two jobs, etc., would carry the same advantage to each corporation over the awarding of only one contract.

In Wirtz v. Columbian Mutual, supra, in citing the legislative history of the Act and the phrase "related activities", the Court pointed out that the Senate Report stated that activities are related not only when they are the same or similar or part of a vertical structure, but also when "they are auxiliary and service activities such as central office and warehousing activities and bookkeeping, auditing, purchasing, advertising, and other services." To the same effect is Wirtz v. First National Bank and Trust Company, 365 F.2d 641, 643 (10th Cir. 1966). The language of the Act itself says it makes no difference that the activities are performed by one or more corporations. Title 29, § 203(r), as amended. The exchange or assignment of workmen by the general superintendent between the corporations is most significant. The profit motive alone would not establish the relationship, Wirtz v. First National Bank, supra, neither would the lack of a profit forbid its existence. The facts and reasonable inferences here presented establish the existence of an enterprise within the meaning of the Act.

Having determined there exists an enterprise, the evidence clearly shows the annual gross receipts in excess of $600,000.00 for each of the years 1963 through 1967. It is agreed the exhibits correctly show the hours worked by the employees in question, their rate of pay, the sums paid them for each workweek shown, and the unpaid overtime. Government Exhibit 1.

Defendants strongly contest the issue here involved. As to Dominion, it agrees its employees are within the provisions of the Act, and as to it, it has complied with the Act in every respect. Algar says it is not within the provisions of the Act. It is sincere in this contention. Each defendant has kept proper and adequate records. No intent on the part of Algar to violate the terms of the Act has been shown. Each defendant readily furnished the information requested by the investigation, and cooperated in every way in presenting the question at issue for determination. Algar says it would have paid the overtime if it had felt its operations came within the provisions of the Act. The issuance of an injunction should not be invoked as punishment. The only purpose for such injunction is to insure future compliance. There is no reason to believe that defendants will not comply in the future. The issuance of the injunction is denied. Wirtz v. Sullivan, 326 F.2d 946 (5th Cir. 1964); Wirtz v. Atlas Roofing, 377 F.2d 112 (5th Cir. 1967); Wirtz v. Kneece, 249 F.Supp. 564 (D.C. S.C.1966); Wirtz v. G & W Packing, 210 F.Supp. 726, 4 Cir., 324 F.2d 802 (D.C.S.C.1962); Wirtz v. Welfare Finance, 263 F.Supp. 229 (D.C.W.Va 1967).

## SUPPLEMENTAL OPINION

Supplementing the opinion filed herein April 4, 1968, the evidence and exhibits filed in this case establish the unpaid overtime (Government Exhibit 1), and hence judgment order may be prepared making allowance for such sums to be paid to the Secretary for distribution, as provided by law. Provided, however, that if said sums have been heretofore paid, evidence of such payments must be presented.

Plaintiff requests allowance of interest from date of withholding to date of

payment. It was pointed out in the original memorandum that each defendant kept proper and adequate records, and that there was no showing of any intent on the part of Algar to violate the terms of the Fair Labor Standards Act. Each defendant furnished all information requested and cooperated to bring about a quick and proper determination of the issues involved. Algar has acted in good faith.

Plaintiff now asserts interest should be allowed upon the sums due for overtime payments and minimum wages. The Act is silent on allowance of interest. I have not been cited any enactment of Congress governing this situation. It seems to be a matter for the determination of the courts. The issue was before the Supreme Court of the United States in Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). The Court held that (1) the question of allowance of interest is governed by federal, not local, law. Id., page 715, and (2) "interest is not recoverable in judgments obtained under § 16(b)." Id., page 715. While this action is brought under § 216(c) (Title 29 § 216(c)), there is little or no difference in the language of the provisions of the statute relative to interest. In a letter of May 1, 1968, counsel asserts interest should be allowed pursuant to the decision in the case of Arsenal Building Corporation v. Greenberg, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (This case was record #421, and was covered in the consolidated opinion of Brooklyn Savings Bank v. O'Neil, supra). At page 716, 65 S.Ct. at page 906, the Arsenal case was reversed "in so far as it included interest."

At the time this case was decided, the granting of liquidated damages was mandatory. After passage of the Portal-to-Portal Act (29 U.S.C. Sec. 251 et seq.) it was within the Court's discretion as to whether or not liquidated damages should be awarded. Up until the passage of the Act in 1947, all the courts followed the Brooklyn Savings Bank case. See Colquette v. Crossett Lumber Co., 149 F.2d 116, 117 (8th Cir. 1945); Phillips v. Star Overall Dry Cleaning Laundry Co., 149 F.2d 416, 420 (2d Cir. 1945); Kreeft v. R. W. Bates Piece Dye Works, Inc., 150 F.2d 818 (2d Cir. 1945); and Stanger v. Vocafilm Corp., 151 F.2d 894, 896, 162 A.L.R. 216 (2d Cir. 1945). The above cases did not allow a recovery of interest.

Since the passage of the Portal-to-Portal Act, however, the cases have split on the question of awarding interest.

Interest was allowed in Wirtz v. Chain Singh, 243 F.Supp. 239 (Canal Zone 1965). Goldberg v. Everbest Meat Products, Inc., 199 F.Supp. 533 (S.D.Fla. 1961), Asselta v. 149 Madison Ave. Corp., 95 F.Supp. 856 (S.D.N.Y.1951).

In Ahearn v. Holmes Electric Protective Co., 110 F.Supp. 822, decided in 1953 by the Southern District of New York, the same court which decided the Asselta case, held that interest was not recoverable, even though no liquidated damages were awarded. Addison v. Huron Stevedoring, 204 F.2d 88 (2d Cir. 1953) refused allowance of interest even though no liquidated damages had been awarded. At page 96, the Court said:

"Finally, the appellants urge that they should be awarded interest on whatever recovery is allowed. They recognize that the Third Circuit has ruled to the contrary in the Landaas case, [Landaas v. Canister Co.,] 188 F.2d 768, 772. We agree with the view there expressed."

Hence, the decision allowing interest in the case of Asselta v. 149 Madison Ave. Corp., supra, has been overruled by the above cited opinion of the Second Circuit.

In Clougherty v. James Vernor Co., 187 F.2d 288 (6th Cir. 1951), cert. denied 342 U.S. 814, 72 S.Ct. 28, 96 L.Ed. 616, interest was allowed only from date of judgment, 28 U.S.C. § 1961, although no liquidated damages were allowed. See also Foremost Dairies, Inc. v. Ivey, 204 F.2d 186 (5th Cir. 1953), where the Court said that liquidated damages, if allowed, would act as compensation for

delay in payment. In Landaas v. Canister Co., 188 F.2d 768 (3d Cir. 1951), the Court held that the Judge could have in his discretion allowed liquidated damages if he had thought it proper, and there should be no award of interest.

In keeping with the language of the statute, the decisions above cited, and of the facts of this case, I am of the opinion interest should not be awarded.

For the reasons set out in the original opinion, the issuance of an injunction is denied.