**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,**

**v.**

**HARDIN & COMPANY, Inc., a corporation, Piggly Wiggly of Attalla, Inc., a corporation, Piggy Wiggly of East Gadsden, Inc., a corporation, Piggly Wiggly of Fort Payne, Inc., a corporation, Piggly Wiggly of Scottsboro, Inc., a corporation, Piggly Wiggly of Centre, Inc., a corporation, and Mary G. Hardin, Defendants.**

**Civ. A. No. 63–481.**

United States District Court
N. D. Alabama, M. D.
March 3, 1964.

Charles Donahue, Solicitor, Beverley R. Worrell, Regional Attorney, Norman H. Winston, Associate Regional Attorney, and Floyd G. Ansley, Attorney, United States Department of Labor, Birmingham, Ala., for plaintiff.

Lusk, Swann & Burns, Gadsden, Ala., and Cabaniss, Johnston, Gardner & Clark, Birmingham, Ala., for defendants.

LYNNE, Chief Judge.

## FINDINGS OF FACT

This action was brought by the Secretary of Labor under Section 17 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C.A. § 201 et seq.), to enjoin alleged violations of the provisions of Sections 15(a) (2) and 15(a) (5) of the Act and to enjoin the withholding of payment of minimum wages and overtime compensation allegedly due employees of the defendants. The issues raised by the complaint are whether the defendants, or any of them, constitute an enterprise within the meaning of Sections 3(r) and 3(s) of the Act, as amended in 1961, and whether any of the employees of the defendants are individually engaged in commerce within the meaning of the Act.

The case was tried before the Court at Gadsden, Alabama, on February 3rd and 4th, 1964. Having considered all of the evidence and pleadings and being otherwise fully advised, the Court hereby makes the following Findings of Fact and Conclusions of Law:

1. Defendant Mary G. Hardin resides in the City of Gadsden, Alabama. Each of the defendants Hardin & Company, Inc., Piggly Wiggly of Attalla, Inc., Piggly Wiggly of East Gadsden, Inc., Piggly Wiggly of Fort Payne, Inc., Piggly Wiggly of Scottsboro, Inc., and Piggly Wiggly of Centre, Inc. is a corporation organized and existing under the laws of the State of Alabama.

2. Each of the defendant corporations owns and operates a retail grocery establishment under the trade name "Piggly Wiggly." Hardin & Company, Inc. owns and operates a Piggly Wiggly store in Gadsden, Alabama, Piggly Wiggly of Attalla, Inc. owns and operates a Piggly Wiggly store in Attalla, Alabama, Piggly Wiggly of East Gadsden, Inc. owns and operates a Piggly Wiggly store in East Gadsden, Alabama, Piggly Wiggly of Scottsboro, Inc. owns and operates a Piggly Wiggly store in Scottsboro, Alabama, Piggly Wiggly of Fort Payne, Inc. owns and operates a Piggly Wiggly store in Fort Payne, Alabama, and Piggly Wiggly of Centre, Inc. owns and operates a Piggly Wiggly store in Centre, Alabama. The defendant corporations were organized and commenced doing business at various times during the period from 1947 to 1961.

3. The defendant corporations have the right to the use of the Piggly Wiggly

trade name in the doing of business under franchise agreements with the Piggly Wiggly Company, and such agreements provide for the payment of franchise fees by each of the defendant corporations to the Piggly Wiggly Company for the use of such trade name. There is no connection between defendants and the Piggly Wiggly Company other than the right which each corporate defendant has to the use of the Piggly Wiggly trade name and the payment of franchise fees by the corporate defendants to the Piggly Wiggly Company for the use of such trade name.

4. The stock ownership and the officers and directors of the defendant corporations are as follows:

Hardin & Company, Inc:

| | |
|---|---|
| Mary G. Hardin, President & Director | 50 shares |
| J. C. Goss, Secretary & Director | 50 shares |
| Curtis Edge, Director | None |
| Mary Lee Hardin | 51 shares |
| Nettie Elizabeth Hardin | 51 shares |
| R. H. Hardin | 48 shares |

Piggly Wiggly of East Gadsden, Inc:

| | |
|---|---|
| Mary G. Hardin, President & Director | 88 shares |
| Curtis Edge, Secretary & Director | 96 shares |
| J. C. Goss, Director | 9 shares |
| Bertie Lee Edge | 3 shares |
| R. H. Hardin | 5 shares |

Piggly Wiggly of Attalla, Inc:

| | |
|---|---|
| J. C. Goss, President & Director | 120 shares |
| Mary G. Hardin, Secretary & Director | 160 shares |
| Sara Goss, Director | 20 shares |

Piggly Wiggly of Fort Payne, Inc:

| | |
|---|---|
| Mary G. Hardin, President & Director | 53 shares |
| David Zane Reece, Vice-President & Director | 32 shares |
| J. C. Goss, Secretary-Treasurer & Director | 45 shares |
| R. H. Hardin | 20 shares |

Piggly Wiggly of Scottsboro, Inc:

| | |
|---|---|
| Mary G. Hardin, President & Director | 25 shares |
| J. C. Goss, Vice-President & Director | 6 shares |
| Emmett Hood, Secretary-Treasurer & Director | 99 shares |
| Mary Lee Hardin | 35 shares |
| Nettie Elizabeth Hardin | 35 shares |

Piggly Wiggly of Centre, Inc:

| | |
|---|---|
| Leon Hardin, President & Director | 60 shares |
| Mary G. Hardin, Secretary & Director | 60 shares |
| J. C. Goss, Director | 20 shares |
| R. J. Bradley | 60 shares |

5. Mary G. Hardin is the daughter of J. C. Goss and Sara Goss. Mary G. Hardin is divorced from her former husband R. H. Hardin and has custody of her minor children Mary Lee Hardin and Nettie Elizabeth Hardin.

6. R. J. Bradley is a Certified Public Accountant and resides in the City of Gadsden, Alabama. He is an independent accountant and practices his profession in the City of Gadsden, Alabama. The defendant corporations utilize the professional services of Mr. Bradley in the keeping of their records and in the preparation of their tax returns.

7. Curtis Edge is the Secretary and a Director of Piggly Wiggly of East Gadsden, Inc., owns 96 shares of its stock, and is manager of the store owned and operated by this corporation. Bertie Lee Edge is the wife of Curtis Edge and owns 3 shares of the stock of this corporation. He was one of the organizers of the business and has an investment of $10,000 in the corporation. He formerly owned his own retail grocery store, which was known as East Broad Food Store, and he sold that store in order to become one of the organizers of and to purchase the interest which he and his wife have in Piggly Wiggly of East Gadsden, Inc.

8. David Zane Reece is the Vice-President and a Director of Piggly Wiggly of Fort Payne, Inc., owns 32 shares of its stock, and is manager of the store owned and operated by this corporation. He likewise owned his own retail grocery store, which was known as Reece's Superette and which he sold in order to purchase the interest which he has in Piggly Wiggly of Fort Payne, Inc. He has an investment of $11,000 in the corporation.

9. Emmett Hood is the Secretary-Treasurer and a Director of Piggly Wiggly of Scottsboro, Inc., owns 99 shares of its stock, and is manager of the store owned and operated by this corporation. He was one of the organizers of the business and has an investment of $20,000 in the corporation.

10. Leon Hardin is the President and a Director of Piggly Wiggly of Centre, Inc., owns 60 Shares of its stock, and is manager of the store owned and operated by this corporation. He was one of the organizers of the business and has an investment of $6,000 in the corporation.

11. Each of the defendant corporations separately pays taxes on its store and on the properties and operations of its store, and separate tax returns are filed by each corporation. Each corporation obtains and carries its own insurance coverage on its store and on the properties and operations of its store through an insurance agency located in the community in which each does business. Each corporation has its bank account with a bank located in the community in which each does business.

12. The employees of Piggly Wiggly of Attalla, Inc., the employees of Hardin & Company, Inc., and the employees of Piggly Wiggly of East Gadsden, Inc. are represented by Unions. Each of these three corporations has a separate contract with the Union which covers the employees of its store.

13. The manager of each of the stores orders and purchases, separately and independently, the groceries, produce, and merchandise which his store stocks and sells. Deliveries of groceries, produce, and merchandise are made by suppliers separately to each store in response to the orders placed by that store, and each corporation is invoiced separately for the goods which it has ordered and purchased. Each of the stores receives shipments of groceries, produce, and merchandise from various suppliers, depending on the choice of the manager of the store.

14. The manager of the Scottsboro store, Emmett Hood, prepares and signs the checks in payment of the groceries, produce, and merchandise which he has ordered for his store and mails such checks to the suppliers. The other stores send the amount of sales and the invoices for the products which they have purchased to the store owned and operated by Hardin & Company, Inc. in Gadsden in order that the invoices may be verified by Elizabeth Waddell, an employee of Hardin & Company, Inc., who is highly

skilled and experienced in this type of accounting and recordkeeping. There checks are drawn on the bank account of the corporation which has purchased the products and are mailed to the suppliers, some of which are located outside the State of Alabama, and there is prepared, separately for each of these five stores, a summary sheet showing the disbursements and sales of each store. Elizabeth Waddell performs such duties regularly. Vivian Collins, Violet Mitchell, and Kay Poe, who are or have been employed by Hardin & Company Inc., assist or have assisted in the performance of such duties on a part-time basis.

15. The cast receipts derived from the operation of each store are deposited in the bank account of the corporation which owns and operates that store, and the expenses involved in the operation of each store are paid from the petty cash fund of the store or by checks drawn on the bank account of the corporation which owns and operates that store.

16. The profits that are derived from the operation of each store are received solely by the corporation which owns and operates that store, and any losses that may be incurred in the operation of a store are suffered only by the corporation which owns and operates that store. There is no common fund or source into which the profits derived from the operations of the stores are received or upon which any losses that may be incurred in the operations of the stores fall.

17. Each of the stores sells the groceries, produce, and merchandise which it has purchased and carries in stock at prices that are determined by the manager of that store. There are no instructions, directions, restrictions, or policies concerning the prices at which the stores sell.

18. The stores are not operated through or subject to a centralized management or common control, and the operations and activities of the stores are not unified. Each store is operated, managed, and controlled separately and independently and without restriction as to products, prices, profits, or management. The stores do not operate for a common business purpose but each store operates for its own separate and distinct business purpose.

19. The manager of each of the stores has and exercises full discretion, authority, and responsibility with respect to all matters concerning the wages and working conditions of employees. There are no instructions, directions, restrictions, or policies concerning such matters other than to the extent such matters are regulated by the contracts that Hardin & Company, Inc., Piggly Wiggly of Attalla, Inc., and Piggly Wiggly of East Gadsden, Inc. each has with the Union, and there is no standardization of employment policies or practices among the various stores. Each manager determines the number of employees that he desires to have for his store and hires such employees, determines the wages to be paid to his employees, pays his employees, assigns employees to jobs and promotes employees, and discharges employees.

20. The manager of each of the stores has and exercises full discretion, authority, and responsibility with respect to the operations and activities of his store. There are no instructions, directions, restrictions, or policies concerning such matters, and there is no standardization of business or operating policies or practices among the various stores. The manager of each store orders and purchases the brands and types of groceries, produce, and merchandise that he desires to sell in his store, in the quantities that he determines, and from the sources that he chooses. Salesmen and representatives of suppliers who seek to sell to a store must call on the manager of that store. Thus, the goods that are on the shelves of each store represent the individual choice of the manager of that store. Similarly, the manager of each store determines the prices at which the groceries, produce, and merchandise are to be sold in his store. The manager of each store likewise arranges for insurance coverage on the properties and opertions of his store through an insurance

agency in the community in which the store is located.

21. The stores in Gadsden, East Gadsden, and Attalla, since they serve the same general trading area in Etowah County, advertise together in a Gadsden newspaper. With this exception, the managers of the stores advertise for their stores separately, in such media as they may choose, determine the products to be advertised or promoted, and determine when to hold sales and the products to be placed on sale.

22. The operations, activities, and management of the stores owned and operated by the corporate defendants are not controlled or unified through or by reason of the stock ownership of or the offices held by the members of the Hardin family in the corporate defendants.

23. Piggly Wiggly of Attalla, Inc. has an annual gross volume of sales of not less than $1,000,000, purchases or receives goods for resale that move or have moved across State lines which amount in total annual volume to $250,000 or more and has employees who handle or work on goods that have been moved in commerce. This defendant has been in compliance with the Act since investigation by the Wage and Hour and Public Contracts Division of the Department of Labor in 1962 and is presently in compliance with the Act. There is no minimum wage or overtime compensation owing to any present or former employee of this defendant with the exception of nine persons who signed receipts for minimum wage or overtime compensation due but who have not received such payment. This defendant agrees that such persons are entitled to receive such payments, has previously offered to do so, and stands ready to make such payments to them.

24. Hardin & Company, Inc., Piggly Wiggly of East Gadsden, Inc., Piggly Wiggly of Fort Payne, Inc., Piggly Wiggly of Scottsboro, Inc., and Piggly Wiggly of Centre, Inc. each has an annual gross volume of sales which is less than $1,000,000.

## CONCLUSIONS OF LAW AND OPINION

### I.

The Court has jurisdiction over the parties and over the subject matter of this action.

### II.

There is no dispute, and the Court holds, that since defendant Piggly Wiggly of Attalla, Inc. has an annual gross volume of sales which is not less than $1,000,000, has purchased or received goods for resale that move or have moved across State lines which amount in total annual volume to $250,000 or more, and has employees who handle or work on goods that have been moved in commerce, this defendant is an enterprise engaged in commerce under Sections 3(r) and 3(s) of the Act.

Although Piggly Wiggly of Attalla, Inc. has been and is in compliance with the Act, the Court believes that plaintiff is, under the recent authorities in this Circuit, entitled to an injunction against this defendant restraining it from not complying with the provisions of Sections 15(a) (2) and 15(a) (5) of the Act and from withholding payment of minimum wages or overtime compensation due the nine persons who have not yet received payment.

### III.

There is likewise no dispute, and the Court holds, that the employees of Hardin & Company, Inc. who regularly prepare and send checks to concerns which are located outside the State of Alabama are by reason of such activity themselves engaged in commerce within the meaning of the Act and are therefore entitled to the minimum wage and overtime compensation of the Act applicable to employees engaged in commerce during the workweeks in which they regularly engage or have engaged in such activity.

### IV.

Defendants Piggly Wiggly of Attalla, Inc. and Hardin & Company, Inc.

are employers within the meaning of the Act. Since, as is customary in injunction suits under the Act, the injunctions to be issued against defendants Piggly Wiggly of Attalla, Inc. and Hardin & Company, Inc. pursuant to Conclusions of Law II and III will include the officers, agents, and employees of such corporations, defendant Mary G. Hardin will be restrained in that capacity, and the Court will therefore dismiss the complaint as to her individually. Compare Helena Glendale Ferry Co. v. Walling, 132 F.2d 616 (8th Cir. 1942).

## V.

The Court doubts that plaintiff intended to press the allegation of the complaint that some employees regularly receive groceries and produce from points outside the State of Alabama. If, however, the allegation was intended to be pressed, the only decision which could be made is that the evidence is insufficient to support such a claim. The only evidence touching this aspect is that such employees as may be available at the time assist in unloading groceries delivered to the stores. There is no evidence concerning the identity of employees who may have unloaded shipments or the extent to which any employee may have engaged in such activity. Compare Sealy v. Mitchell, 249 F.2d 327 (5th Cir. 1957).

## VI.

Turning now to plaintiff's claim that the defendants together constitute an enterprise within the meaning of the Act, there can be no doubt that whether businesses constitute an enterprise under the Act is a question that is to be resolved in each case on the basis of all of the facts of the particular case. The facts of this case have been fully and carefully presented to the Court through the testimony of witnesses in open court and in depositions and through documentary evidence. The Court, having considered all of the evidence, is firmly of the opinion that under the facts as found by the Court in this case, the defendants do not constitute re-

lated activities performed through unified operation or common control for a common business purpose and therefore are not an enterprise within the meaning of the Act.

The Court believes that this result is impelled by the facts as found by the Court in this case which, rather than showing that the businesses are joined together or operated as related activities through unified operation or common control for a common business purpose, establish that each business operates, functions, and is managed separately and independently for its own business purpose.

Moreover, the Court is of the opinion that to treat the facts of this case as an enterprise would not be consistent with the legislative purpose of the enterprise amendments to the Act.

The Report of the Senate Labor Committee states that the activities of separate business entities should be treated as an enterprise "where they are joined either through unified operation or common control into a unified business system or economic unit to serve a common business purpose." Senate Report No. 145, 87th Congress, 1st Session (April 12, 1961). In this case, the facts as determined by the Court establish that the operations of the businesses here involved are not unified or under common control but to the contrary are separate and independent and that the businesses do not in any sense constitute a unified business system or economic unit. Similarly, the facts of this case are that each store operates for its own separate and distinct business purpose and not to serve a common business purpose.

The Report of the Senate Labor Committee likewise tells us that the question of enterprise coverage is to be determined on all of the facts of each case and that "The key in each case may be found in the answer to the question, 'Who receives the profits, suffers the losses, sets the wages and working conditions of employees, or otherwise manages the business in those respects which are the common attributes of an independent busi-

nessman operating a business for profit?' "

Under the facts of this case, the answer to the question of who receives the profits or suffers the losses is that there is no common fund or common source which receives the profits from the operations of the stores or suffers the losses that may be incurred in the operations of the stores. Each business is operated separately and independently. The profits from the operation of a store are received only by the corporation which owns that store, and any losses that may be incurred in the operation of a store are likewise suffered only by the corporation which owns that store.

█ Certainly the existence of separate corporations does not insulate what would otherwise be treated as an enterprise from the coverage of the Act, and no such inference is intended. In this case, however, each business is, in the first place, operated separately and independently so that profits are not received by or losses suffered by a common fund and, in the second place, is composed of different stock interests, officers, and directors. Emmett Hood, David Zane Reece, Leon Hardin, and Curtis Edge is each an officer and director of the corporation which owns the store which he manages, and each owns a substantial financial interest in such corporation. Indeed, Mr. Edge and Mr. Reece sold the grocery stores which they formerly owned in order to purchase their interests. Each of these four persons is accordingly interested in the operations and activities of the store which he manages not only as a manager but as an officer and director and part owner of the business as well.

Under the facts of this case, the answer to the question of who sets the wages and working conditions of employees is that the manager of each of the stores determines the wages of the employees and determines and handles all matters concerning the working conditions of employees, such as the hiring, promotion and transfer, and discharge of employees.

Similarly, the answer to the question of who otherwise manages the business in those respects which are the attributes of an independent businessman is, under the findings of fact, that there is no centralized management or common control and that the manager of each of the stores operates and manages his store in the respects which are the attributes of an independent businessman. In sum total, the facts as found by the Court are that the businesses are operated separately and independently and without restriction as to products, prices, profits, or management.

█ There are indeed some connections among the defendants, but such connections cannot be considered as establishing related activities performed through unified operation or common control for a common business purpose. Specifically, the Court does not consider the utilization by five of the stores (excluding the store at Scottsboro) of the services of employees of Hardin & Company, Inc., in preparing checks and summary sheets of disbursements and sales or the utilization by all the stores of the professional services of an accountant as establishing the statutory criteria of an enterprise. Similarly, the Court does not consider the computation of the franchise fees that each corporation pays to the Piggly Wiggly Company for the use of the Piggly Wiggly trade name on the total amount of sales of the stores as establishing the statutory criteria. The method by which franchise fees are computed can hardly be said to unify the operations of the stores or establish common control or a common business purpose.

█ Nor does the stock ownership of or the offices held by the members of the Hardin family in the corporations substitute for the absence of facts establishing the criteria of the statute. In the first place, the stock ownership and offices of the Hardins is entirely consistent with normal business investment practices. In the second place, the facts as found by the Court are that the businesses are operated separately and inde-

pendently and that the stock ownership and offices of the Hardins does not control or unify the operations or activities of the stores for the performance of a common business purpose.

In summary, therefore, firmly of the opinion that under the facts of this case the businesses do not constitute related activities performed through unified operation or common control for a common business purpose, the Court holds that the defendants do not constitute an enterprise within the meaning of the Act. The Court considers it appropriate in so holding to emphasize that since the question of enterprise coverage is to be determined on all the facts of each particular case, this decision should not be considered as necessarily applicable to other cases, which carry their own particular fact situations.