**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**BARNES GROCER COMPANY, a corporation, Piggly Wiggly Twin State Distributors, Incorporated, a corporation, Bowling Stores, Inc., a corporation, Defendants.**

No. S 66 C 38.

United States District Court
E. D. Missouri,
Southeastern Division.

June 13, 1967.

As Amended by Order June 21, 1967.

Charles Donahue, Sol., Harper Barnes, Regional Atty., Edwin Bramson, Atty., Office of Sol., U. S. Dept. of Labor, Kansas City, Mo., and Veryl L. Riddle, U. S. Atty., by Jim J. Shoemake, Asst. U. S. Atty., St. Louis, Mo., for plaintiff.

H. Kenneth Wangelin, Wangelin & Friedewald, Poplar Bluff, Mo., for defendants.

## FINDINGS OF FACT
## AND
## CONCLUSIONS OF LAW

MEREDITH, District Judge.

This case was tried to the Court and having been fully advised, the Court makes the following findings of fact and conclusions of law:

*Findings of Fact*

1. This action was brought by W. Willard Wirtz, Secretary of Labor, United States Department of Labor, to enjoin the defendant corporations from violating the minimum wage, overtime and record-keeping provisions of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 et seq.), hereinafter referred to as the Act.

2. Defendant Barnes Grocer Company, hereafter referred to as Barnes, is a Missouri corporation located in Poplar Bluff, Missouri, and engaged in the operation of a wholesale grocery business.

Defendant Piggly Wiggly Twin State Distributors, Incorporated, hereafter referred to as Piggly Wiggly, is a Missouri corporation engaged in the operation of two retail grocery stores, one in Poplar Bluff, Missouri, and one in Piggott, Arkansas.

Defendant Bowling Stores, Inc., hereafter referred to as Bowling, is a Missouri corporation engaged in the operation of a retail grocery store in Corning, Arkansas.

3. The stock ownership of the three defendant corporations is as follows:

Barnes:

| | |
|---|---|
| J. B. Jeffress and wife | 481½ shares |
| D. S. McMullan and wife | 481½ shares |
| G. L. Jeffress and wife | 20 shares |
| Total shares outstanding | 983 |

Piggly Wiggly:

| | |
|---|---|
| Barnes Grocer Company | 4600 shares |
| J. B. Jeffress and wife | 30 shares |
| D. S. McMullan and wife | 30 shares |
| Total shares outstanding | 4660 |

Bowling:

| | |
|---|---|
| Barnes Grocer Company | 4041 shares |
| D. S. McMullan and wife | 20 shares |
| James Hammack | 20 shares |
| Total shares outstanding | 4081 |

J. B. Jeffress and Mrs. D. S. McMullan are brother and sister, and G. L. Jeffress and his wife are their parents.

4. The officers and directors of Barnes and Piggly Wiggly during 1964, 1965 and 1966 are as follows:

| | |
|---|---|
| President | J. B. Jeffress |
| Vice-President | D. S. McMullan |
| Secretary-Treasurer | D. S. McMullan |
| Directors: | J. B. Jeffress |
| | D. S. McMullan |
| | G. L. Jeffress |

The officers and directors of Bowling during 1965 and 1966 are as follows:

| | |
|---|---|
| President | D. S. McMullan |
| Vice-President | Floyd Naylor |
| Secretary-Treasurer | James Hammack |
| Directors: | D. S. McMullan |
| | James Hammack |
| | Floyd Naylor |

In 1964 Bowling was incorporated by D. S. McMullan, James C. Hammack and Darrell Bowling, and these individuals comprised the Board of Directors in that year. However, Mr. Bowling's death on January 1, 1965, terminated his position as a director of this corporation, and Floyd Naylor replaced him.

5. The retail grocery stores in Poplar Bluff, Missouri, and in Piggott and Corning, Arkansas, operate under franchise agreements with the Piggly Wiggly Corporation, an unrelated corporation which should not be confused with defendant Piggly Wiggly Twin State Distributors, Incorporated.

6. In 1964 and 1965, Barnes supplied the three retail stores with over fifty percent of their total purchases of goods and merchandise, with the exception of the Corning, Arkansas, store in 1965, in which the percentage of total purchases was 47.3 per cent.

7. Defendant Barnes employs James C. Hammack, a public accountant, whose main office is at the Barnes Grocer Company in Poplar Bluff, Missouri. Barnes furnishes for retail stores who purchase groceries from them certain accounting functions and also certain layout work in advertising. The retail stores pay Barnes for these services. The accounting functions are under the direction of Hammack. The functions which Hammack provides for defendant Piggly Wiggly and defendant Bowling are more detailed than those furnished to the other customers of Barnes. The defendants Bowling and Piggly Wiggly stores send the amount of sales and the invoices for the products which they have purchased to Barnes in order that the invoices may be verified by Hammack. There, checks are drawn on the bank account of the corporation which has purchased the products and are mailed to suppliers, some of which are located outside the State of Missouri, and there is prepared, separately for each of these three stores, a summary sheet showing the disbursements and sales of each store.

8. Each of the three defendant corporations filed separate tax returns during the years in question. Defendants Piggly Wiggly and Bowling had losses during the years in question and defendant Barnes had profits during the years in question. The accountant Hammack testified that had the defendants chosen to do so, they could have filed consolidated tax returns as affiliated corporations, thereby setting off the losses of defendants Piggly Wiggly and Bowling against the profits of defendant Barnes. This, they did not do. Each of defendant corporations obtains and carries its own insurance coverage on its store. Each of defendant corporations has a separate bank account located in the community in which each does business.

9. J. B. Jeffress negotiated the leases of the premises occupied by the retail stores. The Corning, Arkansas, store premises were leased to Barnes which subleased them to Bowling. In the lease of the Poplar Bluff, Missouri, store premises, Barnes and Piggly Wiggly are joint lessees and in the lease of the Piggott, Arkansas, store premises to Piggly Wiggly, Barnes executed the lease as a guarantor of the lessee's obligations.

10. In the sublease agreement between Barnes and Bowling, the parties agreed that "the Barnes Grocer Company will make available to said sublessees such items of merchandise as said Barnes Grocer Company carries, at competitive market prices during the term of this lease, and that the said sublessees agree to purchase from the Barnes Grocer Company all such merchandise as is available from the said Barnes Grocer Company exclusively." However, the evidence showed purchases by Bowling from competitors of Barnes on items carried by Barnes.

11. The sales of the retail stores of defendants Bowling and Piggly Wiggly were combined for the purpose of computing the franchise fee to be paid to the Piggly Wiggly Corporation under their franchise agreements.

12. The manager of each of the stores orders and purchases, separately and independently, the groceries, produce, and merchandise which his store stocks and sells. Deliveries of groceries, produce, and merchandise are made by suppliers separately to each store in response to the orders placed by that store, and each corporation is billed separately for the goods, which it has ordered and purchased. Each of the stores receives shipments of groceries, produce, and merchandise from various suppliers, depending on the choice of the manager of the store.

13. The gross volume of sales for the calendar years 1965 and 1964 for each of the defendants' establishments were:

|  | 1965 | 1964 |
|---|---|---|
| Barnes Grocer Co. | $5,351,414.66 | $5,317,185.03 |
| Piggly Wiggly, Piggott, Ark | 422,862.85 | 385,321.66 |
| Piggly Wiggly, Poplar Bluff, Mo. | 561,982.37 | 415,612.30 |
| Piggly Wiggly, Corning, Ark. | 298,777.39 | 30,956.84 |

Defendant Piggly Wiggly and defendant Bowling have during the years in question employed some employees at their stores at less than the minimum wage and at less than time and a half for overtime and the records of these defendants do not show on their face the number of hours worked daily and weekly by all employees. The records were reconstructed to show this information.

14. Mr. Floyd Naylor is an employee of defendant Piggly Wiggly and during the times in question performed some functions for Piggly Wiggly, as well as defendant Bowling. He does not perform any functions for defendant Barnes.

15. The cash receipts derived from the operation of each store are deposited in the bank accounts of the corporation which owns and operates that store, and the expenses involved in the operation of each store paid from the petty cash fund of the store or by checks drawn on the bank account of the corporation which owns and operates that store.

16. The profits that are derived from the operation of each store are received solely by the corporation which owns and operates that store, and any losses that may be incurred in the operation of a store are suffered only by the corporation which owns and operates that store. There is no common fund or source into which the profits derived from the operations of the stores are received or upon which any losses that may be incurred in the operation of the stores fall.

17. The stores are not operated through or subject to a centralized management or common control, and the operations and activities of the stores are not unified. There is some common control of Bowling and Piggly Wiggly. Each store is operated, managed, and controlled separately and independently and without restriction as to products,

prices, profits, or management. The stores do not operate for a common business purpose but each store operates for its own separate and distinct business purpose.

18. The manager of each of the stores has and exercises full discretion, authority, and responsibility with respect to all matters concerning the wages and working conditions of employees. There are no instructions, directions, restrictions, or policies concerning such matters, and there is no standardization of employment policies or practices among the various stores. Each manager determines the number of employees that he desires to have for his store and hires such employees, determines the wages to be paid to his employees, pays his employees, assigns employees to jobs and promotes employees, and discharges employees.

19. The manager of each store orders and purchases the brands and types of groceries, produce, and merchandise that he desires to sell in his store, in the quantities that he determines, and from the sources that he chooses. Salesmen and representatives of suppliers who seek to sell to a store must call on the manager of that store. Thus, the goods that are on the shelves of each store represent the individual choice of the manager of that store. Similarly, the manager of each store determines the prices at which the groceries, produce, and merchandise are to be sold in his store.

20. Barnes is a wholesale grocery operation, is under the Act, is complying with the Act, and the Secretary does not contend that Barnes, alone, is not complying with the Act.

### Conclusions of Law

1. The Court has jurisdiction over the parties and over the subject matter of this action.

2. There is no dispute, and the Court holds that defendant Barnes is an enterprise engaged in commerce under §§ 3(r) and 3(s) of the Act.

3. The government here seeks to combine the operations of defendant Barnes, a wholesale grocer, admittedly covered by the Act, with the operations of defendants Piggly Wiggly and Bowling, which are retail stores, and which have intertwined stockholderships and Boards of Directors. The government relies primarily on Wirtz v. Savannah Bank & Trust Co. of Savannah, 362 F.2d 857 (5th Cir. 1966) ; Wirtz v. First National Bank & Trust Co., 365 F.2d 641 (10th Cir. 1966) ; and West v. Wal-Mart, Inc., 264 F.Supp. 158 (W.D.Ark.1967). The defendant relies on the factual situation that there are no related activities performed through a unified operation or common control for a common business purpose and relies on the case of Wirtz v. Hardin & Co., 253 F.Supp. 579 (N.D.Ala.1964), aff'd 359 F.2d 792 (5th Cir. 1966).

4. The plaintiff has the burden of proof to establish a preponderance of the evidence that all three defendants constitute related business activities performed through unified operation and common control for a common business purpose and constitute enterprise within the meaning of 3(r) of the Act. This, they have failed to do for the years in question, 1964 and 1965.

5. The stockownership and interrelated directors, without the actual fact of unified purposes and common control, are insufficient to bring defendants Bowling and Piggly Wiggly under the Act.

6. Plaintiff's complaint will be dismissed at its cost.

### ORDER NUNC PRO TUNC

It appearing to the Court that the complaint in this cause was filed on July 11, 1966, and that the provisions of 28 U.S.C. § 2412 relating to costs were not applicable to suits filed prior to July 18, 1966, the effective date of the amendment providing that costs may be assessed against the United States, and it further appearing to the Court that in the Findings of Fact, Conclusions of Law and Judgment of this Court, dated June 13, 1967, the Court dismissed plain-

tiff's complaint and taxed the costs against the United States, accordingly,

It is hereby ordered that the Findings of Fact, Conclusions of Law and Judgment be and the same are amended so that the costs of each party shall be borne by that party.