398 F.2d 718
 W. Willard WIRTZ, Secretary of Labor, United States
Department of Labor, Appellant,
v.
BARNES GROCER COMPANY, a Corporation; Piggly Wiggly Twin
State Distributors, Incorporated, a Corporation;
and Bowling Stores, Inc., a Corporation,
Appellees.
 No. 19007.
 United States Court of Appeals Eighth Circuit.
 Aug. 1, 1968.
 
 1
 Robert E. Nagle, Atty., U.S. Department of Labor, Washington, D.C., for appellant; Charles Donahue, Sol. of Labor, Bessie Margolin, Associate Sol., and David Meyers, Atty., U.S. Dept. of Labor, Washington, D.C., and Harper Barnes, Regional Atty., U.S. Dept. of Labor, Kansas City, Mo., on the brief.
 
 
 2
 H. K. Wangelin, of Wangelin & Friedewald, Poplar Bluff, Mo., for appellees.
 
 
 3
 Before VAN OOSTERHOUT, Chief Judge, BLACKMUN, Circuit Judge, and VAN PELT, District Judge.
 
 
 4
 VAN PELT, District Judge.
 
 
 5
 This is an action under the Fair Labor Standards Act of June 25, 1938, for injunctive relief. Following a trial, the District Court dismissed the complaint. See Wirtz v. Barnes Grocer Company, 271 F.Supp. 894. Plaintiff Secretary of Labor has appealed.
 
 
 6
 The primary question involved is whether the three defendants are one enterprise within the meaning and definition of the Act.
 
 
 7
 Barnes Grocer Company of Poplar Bluff, Missouri, has since 1933 been engaged in the wholesale grocery business. Barnes sells the defendant's three stores and one other Piggly Wiggly store and a group of approximately seventy stores known as Circle B on the basis of cost plus 3 1/2% Of markup. It sells its other customers, who number approximately 400, at cost plus 8% Markup. Piggly Wiggly Twin State Distributors, Incorporated, hereafter called Piggly Wiggly, operates two retail groceries under franchise from the national Piggly Wiggly Corporation; one is in Poplar Bluff, Missouri and one in Piggott, Arkansas. In the agreement with national Piggly Wiggly it is provided that the 'Operator shall be permitted to place on his window in letters substantially smaller the words 'Owned and operated by Barnes Grocery Company', or 'Barnes Grocery Company Licensee,' inserting his own individual, partnership or corporate name therein.' Bowling Stores, Incorporated, hereafter called Bowling, operates a Piggly Wiggly franchised store in Corning, Arkansas.
 
 
 8
 The trial court's findings in the reported opinion set forth the gross dollar volume of sales of Barnes and of each of the retail stores and the amount of the sales by Barnes to each store. From these figures it is evident that in 1964 and 1965 Barnes supplied the three retail stores with over 50% Of their total purchases of goods and merchandise except for the Corning store in 1965 in which the percentage was 47.3%. Substantial items, dollar wise, sold by the retail stores, such as meats, were not handled by Barnes. Hence the dependency on Barnes as a grocery supplier is greater than these percentages would indicate. The stock ownership as set out in the trial court's opinion is undisputed as are the officers and directors enumerated. We note, as did the trial court, that J. B. Jeffress and Mrs. D. S. McMullan are brother and sister, and G. L. Jeffress and his wife are their parents. These three related families own all of the stock of Barnes and, with Barnes, all of the stock of the other corporations except 20 shares in Bowling which are owned by James Hammack, the Barnes Company accountant. The remaining 4,061 shares in Bowling are owned either by Barnes or by members of the Jeffress family. The Jeffress and McMullans held all of the offices, including directorships, in Barnes and Piggly Wiggly during 1964, 1965 and 1966. Floyd Naylor, hereafter mentioned, and accountant Hammack, are officers and directors of Bowling, along with Mr. McMullan.
 
 
 9
 J. B. Jeffress negotiated the lease of the two Piggly Wiggly stores and Barnes is joint lessee with Piggly Wiggly of the land on which the Poplar Bluff store is located. Barnes is guarantor of the lease on the Piggott store.
 
 
 10
 Barnes leased the premises on which the Bowling store is located and sublet the ground to Bowling. In this sublease it is provided:
 
 
 11
 'It is further understood and agreed that the Barnes Grocer Company will make available to said Sublessees such items of merchandise as said Barnes Grocer Company carries, at competitive market prices during the term of this lease, and that the said Sublessees agree to purchase from the Barnes Grocer Company all such merchandise as is available from the said Barnes Grocer Company exclusively.'
 
 
 12
 Each store has a manager who may hire, discharge and set the wages for the store employees. The manager is allowed to select the type, sources and quantitites of goods to be carried and the price at which they are to be sold. None of the managers have a financial interest in the store operated. He pays wages and certain other bills in cash and deposits the rest in a checking account on which he cannot write checks. Floyd Naylor supervises the three managers. They can be hired and fired by him and he supervises their hiring and sets their salary. Each is under an identical incentive bonus plan.
 
 
 13
 Barnes supplies auditing services for these and other stores, for which a separate charge is made. The books are kept by James Hammack, who prepares the checks and invoices. Hammack signs for Bowling; McMullan for Piggly Wiggly. He prepares the income tax return for each. Although they could file consolidated returns since they 'are considered an affiliated group' they have elected to file separately.
 
 
 14
 It is conceded that Barnes is an enterprise within the meaning of 29 U.S.C.A. sections 203(r) and (s)(1). Barnes is not only under the Act but is complying so far as the record in this case is concerned.
 
 The applicable statutes read:
 
 15
 'As used in this chapter--
 
 
 16
 (r) 'Enterprise' means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed for such enterprise by an independent contractor: Provided, That, within the meaning of this subsection, a retail or service establishment which is under independent ownership shall not be deemed to be so operated or controlled as to be other than a separate and distinct enterprise by reason of any arrangement, which includes, but is not necessarily limited to, an agreement, (1) that it will sell, or sell only, certain goods specified by a particular manufacturer, distributor, or advertiser, or (2) that it will join with other such establishments in the same industry for the purpose of collective purchasing, or (3) that it will have the exclusive right to sell the goods or use the brand name of a manufacturer, distributor, or advertiser within a specified area, or by reason of the fact that it occupies premises leased to it by a person who also leases premises to other retail ro service establishments.
 
 
 17
 (s) 'Enterprise engaged in commerce or in the production of goods for commerce' means any of the following in the activities of which employees are so engaged, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person:
 
 
 18
 (1) any such enterprise which has one or more retail or service establishments if the annual gross volume of sales of such enterprise is not less than $1,000,000, exclusive of excise taxes at the retail level which are separately stated and if such enterprise purchases or receives goods across State lines (not in deliveries from the reselling establishment) which amount in total annual volume to $250,000 or more; * * *.'
 
 
 19
 While it is the appellant's claim that the trial court held that both unified operation and common control must be shown, we do not so find. This claim is based on language in Conclusions of Law reading:
 
 
 20
 '4. The plaintiff has the burden of proof to establish a preponderance of the evidence that all three defendants constitute related business activities performed through unified operation and common control for a common business purpose and constitute enterprise within the meaning of 3(r) of the Act.'
 
 
 21
 We find that the related activities to be performed for a common business purpose can be either through unified operation or through common control and believe the trial court so understood.
 
 
 22
 The question before us is whether under this record there is common control of the three corporations. We find there is and reverse the trial court. The Jeffress and McMullans are in effect one family. J. B. Jeffress and Mrs. McMullan are son and daughter of G.L. and Mrs. Jeffress. They own all of the stock of Barnes. Barnes in turn owns 4600 of 4660 shares of Piggly Wiggly. The remaining sixty are owned by J. B. Jeffress and wife and by D. S. McMullan and wife. Barnes owns 4041 shares of Bowling; the McMullans own 20 of the remaining shares and the Barnes accountant, James Hammack, owns 20. Thus, in effect, the Jeffress family owns complete control of Piggly Wiggly and 99.51% Of Bowling. Barnes subleased to Bowling the store property occupied by Bowling, and Bowling in the sublease agrees to buy from Barnes exclusively all such merchandise as is available from Barnes at competitive prices. Barnes is a joint lessee of the Poplar Bluff store and guarantees the lease of the Piggott store. Uner Exhibits 12 and 13a, which relate to the Poplar Bluff and Piggott stores, Barnes could place a sign on the window showing Barnes' ownership and operation. It is thus difficult to see how there could be much greater control of the business premises than is now in Barnes.
 
 
 23
 The sales of all three stores are combined in computing the franchise fee to be paid national Piggly Wiggly. Such combination is permissible under the agreements with the national Piggly Wiggly only if the operator owns at least a 51% Interest in such other store. See plaintiff's Exhibits 12, 13a and 14. The only common operator of the three stores justifying such a combination of necessity has to be Barnes.
 
 
 24
 In reaching the finding of common control, we feel that Wirtz v. Hardin & Company, 253 F.Supp. 579, aff'd 5 Cir., 359 F.2d 792, is not controlling on the facts in this case. Basically, the opinion of the Court of Appeals is that of the district judge as reported in 253 F.Supp. 579. We prefer the reasoning, so far as applicable, of District Judge Miller in West v. Wal-Mart, Inc., D.C., 264 F.Supp. 158. We recognize, as does Hardin, that 'whether businesses constitute an enterprise under the Act is a question that is to be resolved in each case on the basis of all of the facts of the particular case', and that 'the existence of separate corporations does not insulate what would otherwise be treated as an enterprise from the coverage of the Act.' We believe, however, that it was not the intent of the Congress that the term be given the limited meaning of Hardin. Rather, we look to whether there is substantial ownership or control of the firms, whether separately incorporated or not, and where as here, we find nearly 100% Ownership and such important control as selection of managers, leases and place of business and in one instance an exclusive purchasing arrangement, even though not always followed, together with the sale of 50% Or more of commodities handled, a figure which would be increased substantially if purchases of items not handled by Barnes were deducted from the total purchases, we conclude as did Judge Miller in Wal-Mart, Inc., supra, that the activities were related, that a common business purpose was clearly present and that the businesses constitute an enterprise under the Fair Labor Standards Act.
 
 
 25
 Appellees urge that under Rule 52(a) due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses and that we should not set aside findings of fact unless clearly erroneous. This is not the type of situation the rule was intended to cover. Credibility is not in issue. In issue are the conclusions of law as to what constitutes an enterprise and whether under the undisputed facts, an enterprise as defined in the Act, was shown.
 
 
 26
 We conclude, as above indicated, that the facts herein are nearer Wal-Mart than Hardin and that it was clearly shown that the three defendants through common control constitute related business activities performed for a common business purpose.
 
 
 27
 We reverse and remand to the district court for entry of an order restraining further violations of the Act's minimum wage, overtime and record-keeping requirements.