Ray MARSHALL, Secretary of Labor,
U.S. Department of Labor,
Plaintiff-Appellee,

v.

SHAN–AN–DAN, INC.; Precision Transmission, Inc.; Bob Yarbrough,
Defendants-Appellants.

No. 83–3425.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 23, 1984.
Decided Nov. 9, 1984.

Curtis J. Butcher (argued), Carmel, Ind., for defendants-appellants.

Elizabeth W. Boncella, U.S. Dept. of Labor, Cleveland, Ohio, Ruth Peters (LC), Barbara E. Kahl (argued), Washington, D.C., for plaintiff-appellee.

Before MERRITT and WELLFORD, Circuit Judges, CELEBREZZE, Senior Circuit Judge.

WELLFORD, Circuit Judge.

Plaintiff, the Secretary of Labor, initiated this action under the Fair Labor Standards Act (Act), 29 U.S.C. § 201 *et seq.*, to recover back wages allegedly owed to certain employees of defendant, Shan-An-Dan, Inc., d/b/a "Precision Transmission" ("Shan-An-Dan," the franchisee), defendant, Bobby Yarbrough, President of Shan-An-Dan, and defendant, Precision Transmissions, Inc. ("Precision," the franchisor), and to enjoin future violations of the minimum wage, overtime and recordkeeping requirements of the Act. Defendants appeal from the Magistrate's judgment for plaintiff.[1]

The primary issue before us is whether a franchisee, Shan-An-Dan, and its franchisor, Precision, are engaged in an enterprise within the meaning of Section 3(r) of the Act, 29 U.S.C. § 203(r), which applies to an "enterprise" engaged in commerce or the production of goods for commerce whose annual gross volume of sales is at least $250,000, 29 U.S.C. § 203(s). Only if the franchisor and franchisee are combined and treated as a single enterprise is there sufficient annual dollar volume of business to bring the defendant franchisee within the coverage of the Act. The Magistrate found that the franchisor and franchisee constituted such an enterprise, as contemplated by the Act, recognizing at the same time, as conceded by the Secretary, that the annual dollar volume of the franchisee

alone is insufficient for the Act to apply to it.

Precision is an Indiana corporation engaged in the business of selling and servicing franchises for the operation of transmission repair services. Its principal office is in Indiana. Mr. Yarbrough, President of Shan-An-Dan, entered into a franchise agreement with Precision in August of 1978, and decided to incorporate his new business in Ohio under the name Shan-An-Dan, Inc. to engage in the business of selling, servicing and repairing motor vehicle transmissions and parts. Shan-An-Dan regularly purchases and receives transmission parts from Precision.

The Magistrate held that the operations of the franchisee and franchisor constituted a single enterprise under 29 U.S.C. § 203(r), which provides:

"Enterprise" means the related activities performed (either through unified operation or common control) by any person or persons for common business purposes, and includes all such activities whether performed in one or more establishments or by one or more corporation or other organizational units including departments....

The Magistrate noted the three elements that must be present to determine that an enterprise exists: "(1) related activities; (2) performed through unified operations[2] or common control; (3) for a common business purpose." *See, e.g., Brennan v. Arnheim and Neely Co.*, 410 U.S. 512, 518, 93 S.Ct. 1138, 1142, 35 L.Ed.2d 463 (1973); *Wirtz v. Columbian Mutual Life Ins. Co.*, 380 F.2d 903 (6th Cir.1967). The Magistrate correctly observed that the Secretary has the burden of proving the existence of an enterprise by a preponderance of evidence, *see, e.g., Schultz v. Morris*, 315 F.Supp. 558 (M.D.Ala.1970), *aff'd sub nom., Hodgson v. Morris*, 437 F.2d 896

---

1. The parties consented to a hearing before and entry of judgment by the Magistrate pursuant to 28 U.S.C. § 636.

2. Both parties concede that unified operations do not exist in this case. Precision and Shan-

An-Dan conduct separate operations under separate managements. The Magistrate, however, found requisite "common control," citing *Dunlop v. Ashy*, 555 F.2d 1228, 1231 (5th Cir.1977).

(5th Cir.1971), and that "all the facts and circumstances [must be examined] to determine if defendant is an enterprise within the meaning of the Act. *Wirtz v. Hardin and Co.,* 253 F.Supp. 579 (M.D.Ala.1964), *aff'd,* 359 F.2d 792 (5th Cir.1966)." [3]

The Magistrate set out his principal basis for finding related activities:

> The franchisor and franchisee in the instant case engaged in joint advertising activities to establish a favorable public perception of the Precision Transmission name. Both businesses sell transmission parts to other dealers at wholesale rates. The franchisor sells transmission parts to the franchisee in a wholesaler/retailer relationship, thus establishing a vertical structure for the delivery of automotive repair services. *See, e.g., Wirtz v. Barnes Grocer Company,* 398 F.2d 718 (8th Cir.1968). Moreover, the franchisor has substantial control over a chain of transmission repair service centers which perform the same business activities.

The Magistrate then considered whether the franchisee and the franchisor had a common business purpose. The Magistrate first noted that activities are performed for a common business purpose when the operation of one business furthers that of another business through the internal operation of the business and through the establishment of a favorable public image. The Magistrate recognized, however, that profit motive alone is not justification for finding a common business purpose. *See Columbian Mutual Life, supra,* and *Sideris, supra.* The Magistrate also found the Secretary's determination, *see* 29 C.F.R. § 779.-213 (1983), that activities of Precision and Shan-An-Dan were performed with a common business purpose when directed to the same business objective or to similar objectives in which the group has an interest, to be a reasonable interpretation and thus entitled to great deference.

The Magistrate, applying these principles to the instant case, held that the franchisor and franchisee had a common business purpose:

> The franchisor's profits are derived on a percentage basis from the receipts generated by the franchisee. In addition to profit motive, they engage in joint advertising efforts to further the name Precision Transmission as a tradename of quality in the public mind. The objective of both the franchisor and franchisee is to establish an efficient and successful transmission repair shop. The franchisee benefits monetarily, as does the franchisor. The franchisor also benefits through the enhancement of the tradename and orders for additional parts by the franchisee. Moreover, the franchise agreement shows the parties have contemplated a long-term working relationship to create a profitable and growing concern for their mutual benefit.

*Dunlop v. Ashy* establishes that the test for common control is "whether there is a common control center with the ultimate power to make binding policy decisions for all units of the enterprise." 555 F.2d at 1231, citing *Schultz v. Mack Farland,* 413 F.2d at 1296 (5th Cir.1969). In *Ashy,* both district and circuit courts concluded that a "related" Downtowner Motor Inn and a restaurant situated therein did not meet the above common control test, because, among other things, the restaurant operators determined the items on the menu and did their own hiring and firing, despite the fact that the managers of the motel and the restaurant worked "closely" together and the former "made suggestions about the restaurant which [the latter] often follows." *Id.* at 1231. Many factors present in *Ashy* that were favorable to the Secretary are missing in the instant controversy:

> (1) the separate operations worked out of the same location;

---

**3.** The Magistrate also cited *Marshall v. Sideris,* 524 F.Supp. 521 (D.Ncb.1981), *rev'd sub nom. Donovan v. Sideris,* 688 F.2d 74 (8th Cir.1982), as support. The Eighth Circuit reversed *Marshall* because the evidence indicated the exist-

ence of a "single enterprise." In effect, the appellate court determined that the district court failed to examine all the facts and circumstances.

(2) daily receipts from the restaurant were placed in the motel safe;

(3) the businesses worked closely together and "cooperated" with continuing daily personal relationship between the two managers; and

(4) the motel's auditor prepared the restaurant's daily report of operations.

■ Despite the existence of these factors, "practical and realistic factors" outweighed the above considerations in the decision in Ashy that there was no common control within the meaning of the Act. This case should have been recognized as strong authority for appellant, since none of the above four considerations favorable to the Secretary are present: first, the entities are not only in separate locations, they are in different states; second, no daily recordkeeping or safekeeping activities are conducted by one entity for the other; and, third, there was no demonstrated close and continuous personal relationships existed between the two managers of the franchisor-franchisee business.

■ Precision and Shan-An-Dan have entirely different stockholders, directors, officers, and they share no managers, auditors, or common facilities for storage or recordkeeping. It is difficult to perceive, in light of these circumstances, the existence of common control in light of these "practical and realistic" factors. The Magistrate mistakenly relied upon provisions in the franchise agreement that he perceived as containing "restrictions on products, prices, profit and management which establish the franchisor's common control and deny the franchise owner the essential prerogatives of an ordinary businessman." The "restrictions" on profits, however, were found to be based on the existence of franchise fees, and royalty and warranty fund payments, which are common in the franchising field. These fees and payments, however, do not restrict profits in the sense of controlling or limiting them—the success of the franchisee in terms of profitability de-

pends upon the sales it generates and its ability to manage costs successfully. Likewise, the "restriction" on "products" found by the Magistrate was based on a franchise provision prohibiting the franchisee from engaging in any other business apart from repair and service of transmissions and sale of parts related thereto. This is not the kind of "common control" envisioned by the Act, nor by the regulations issued by the Secretary thereunder.[4] The franchisee, while subject to certain agreed minimum specified hours of operation, was free to control wages, hours and conditions of employment of its personnel, and essentially made its own independent hiring and firing decisions.

The Act itself indicates that it does not encompass a usual franchise relationship:

[A] retail or services establishment which is under independent ownership shall not be deemed to be so operated or controlled as to be other than a separate and distinct enterprise by reason of any arrangement, which includes, but is not necessarily limited to, an agreement (1) that it will sell, or sell only, certain goods specified by a particular manufacturer, distributor, or advertiser, or (2) that it will join with other such establishments in the same industry for the purpose of collective purchasing, or (3) that it will have the exclusive right to sell the goods or use the brand name of a manufacturer, distributor, or advertiser within a specified area, or by reason of the fact that it occupies premises leased to it by a person who also leases premises to other retail or service establishments.

29 U.S.C. § 203(r) (1976).

The legislative history of the Act contained in the following Senate Report specifically notes that the Act was not intended to encompass an ordinary franchise:

The bill ... contains provisions which should insure that a small local independent business, not in itself large enough to come within the new coverage, will not

---

**4.** 29 C.F.R. § 779.230 and § 779.231 make it clear that an ordinary franchise arrangement

does not create an enterprise.

become subject to the act by being considered a part of a large enterprise with which it has business dealings.

The definition of "enterprise" expressly makes it clear that a local retail or service establishment which is under independent ownership *shall not be considered to be so operated and controlled as to be other than a separate enterprise because of a franchise, or group purchasing, or group advertising arrangement with other establishments or because the establishment leases premises from a person who also happens to lease premises to other retail or service establishments.* ....

*The same result will follow in the case where a local establishment agrees that it will sell certain goods specified by a particular manufacturer, distributor or advertiser, or where the establishment has the exclusive right to sell the goods or use the brand name of a manufacturer, distributor or advertiser within a specified area.*

S.Rep. No. 145, 87th Congress, 1st Sess., *reprinted in* 1961 U.S.Code Cong. & Ad. News 1620, 1660–62 (emphasis added).

In addition, the Supreme Court in *Brennan v. Arnheim and Neely Co., Inc.*, 410 U.S. 512, 517–18, 93 S.Ct. 1138, 1141–42, 35 L.Ed.2d 463 (1973), (emphasis added) observed:

Specific exemptions are noted [in 29 U.S.C. § 203(r)], making clear that exclusive dealership arrangements, collective purchasing pools, *franchises*, and leases of business premises from large commercial landlords *do not create "enterprises" within the meaning of the Act.*

None of the cases cited by the Magistrate constitute authority for his holding that the franchisor and franchisee in this case constitute a single enterprise under 29 U.S.C. § 203(r): *Ashy* is strong authority for defendants; *Brennan* notes the franchise exemption; *Barnes Grocer Company* involved a single family ownership operation, which controlled three Piggly Wiggly grocery stores and combined their sales in computing the franchise fee (a situation completely different from the instant case, cf. *Wirtz v. Hardin & Co.*, 253 F.Supp. 579 (M.D.Ala.1964), *aff'd*, 359 F.2d 792 (5th Cir. 1966)); *Columbian Mutual Life* involved an insurance company and its agent, who handled maintenance employees in a building occupied and leased by the company— the court held that the home office and office building activities were "related" and had a "common business purpose" under section 3(r) of FLSA—again, a relationship entirely foreign to that existing here; *Donovan v. Janitorial Services, Inc.*, 672 F.2d 528 (5th Cir.1982), involved three corporations owned in common by a single owner, who held them out to the public as a single entity and which shared office space, clerical staff, and a telephone system; *Mack Farland* involved two corporations, which had a single financial investor who set management policy for both, which occasionally interchanged employees, and which had common directors and officers— again, not comparable to the facts here.[5]

That the franchise agreement in question limited the kind of business operations that could be operated by the franchisee is less restrictive than the franchise relationship countenanced in § 203(r). Legislative history makes it clear that a group advertis-

---

**5.** The district court opinions cited (several affirmed without separate appellate opinions) were no more closely related to the present factual franchisor-franchisee situation than the Supreme Court and circuit court decisions herein briefly summarized: *Schultz v. Morris*, 315 F.Supp. 558 (M.D.Ala.1970), *aff'd sub nom. Hodgson v. Morris*, 437 F.2d 896 (5th Cir.1971); *Schultz v. Deane-Hill Country Club, Inc.*, 310 F.Supp. 272 (E.D.Tenn.1969), *aff'd*, 433 F.2d 1311 (6th Cir.), *cert. denied*, 400 U.S. 820, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970); *Wirtz v. Old Dominion Corp.*, 286 F.Supp. 378 (E.D.Va.1968); *Marshall v. Sideris*, 524 F.Supp. 521 (D.Neb.1981), *rev'd sub nom. Donovan v. Sideris*, 688 F.2d 74 (8th Cir.1982). None of these cases involved a franchisor-franchisee arrangement *per se*, and each involved as a principal factor one financial investor/ownership or a common location of several different business entities. The most closely analogous case, *Marshall v. Conditt*, 89 Labor Cases ¶ 33,940 (M.D.Tenn.1980), involving a franchisor-franchisee relationship and holding against the Secretary, was distinguished by the Magistrate.

ing arrangement by or the shared right to use the brand name of a manufacturer or distributor between a franchisor and franchisee does not make the two a single entity for purposes of FLSA. In sum, we are of the opinion that the conclusions of the Magistrate on the facts in this record are clearly erroneous, and that defendants are distinct and separate business entities that are not engaged in an enterprise within the meaning of the Fair Labor Standards Act.

Accordingly, we REVERSE the judgment below and direct entry of judgment for defendants-appellants.